64    69
138a 333

64    63
29ap619

JOHN FOLEY, JR., AND OTHERS, RESPONDENTS, v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, APPELLANT.

*Guardian in socage — his rights relate only to personal property — a surrender of an endowment life insurance policy — ratification by an infant — counter-claim.*

A life insurance company issued, in 1876, to one Foley an endowment policy, payable in 1891. In 1879 Foley assigned it to his wife and children. In the same year his wife died seized of real estate, leaving a will in which she appointed her husband executor and also guardian of her children, and to them she bequeathed all her property in equal shares.

In 1888 Foley surrendered the policy, as executor and guardian, and receipted in those capacities for the moneys paid by the company on such surrender. No letters of guardianship were ever issued to Foley.

In an action brought by the children to have the surrender by Foley declared to be void and to have the policy reinstated:

*Held*, that Mrs. Foley's appointment, by her will, of her husband as guardian of their children was invalid.

That, even if it had been valid, until letters of guardianship had been issued to him, he would have had no power over the estate of his children.

That Foley, as guardian in socage, had no power to surrender the policy.

That the rights of such a guardian are controlled by the Revised Statutes and do not extend to personal property.

That where an infant does not expressly ratify an act, it must appear that, after majority, he accepted the fruits of the unauthorized act, or in some way is benefited by it.

That as a father was obliged by law to support his children, the insurance company would not be allowed to set up as a counter-claim, against the recovery of the sum which was paid by it upon the surrender of the policy by the father, such sums of money as the father had expended for the maintenance of the children.

APPEAL by the defendant, the Mutual Life Insurance Company, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 9th day of June,

1891, in favor of the plaintiffs for $6,491.72, with interest and costs, after a trial by the court at the New York Special Term.

The action was brought to set aside a surrender of an endowment policy of life insurance, and to have the same reinstated, by the children of John Foley and of Elizabeth A. Foley, the latter of whom died possessed of certain real property, and left a will in which she provided, among other things, as follows :

*Second.* I give and bequeath all my property, real and personal, of whatsoever nature and name and wheresoever situated, after the payment of my debts, to and amongst my children, including any unborn child, share and share alike.

*Third.* I hereby nominate, constitute and appoint my said husband, John Foley, executor of this, my last will and testament, and guardian of the person and estate of my said children respectively, including any unborn child of mine during minority, and give to my said executor full power to sell and convey all property, real and personal, of which I may die seized or possessed.

*Julien T. Davies* and *Edward Lyman Short*, for the appellant.

*Herbert Green*, for the respondents.

O'BRIEN, J. :

This action was brought to have a surrender of a life insurance policy adjudged void, and the policy declared to be in force in favor of plaintiffs, and delivered up to them on payment of certain back premiums. The policy was an endowment policy on the life of John Foley and was issued in 1876. It was therein provided, in consideration of the payment of certain premiums at stated times, that defendant would pay to John Foley or his assigns, in 1891, the sum of $10,000, or if he should die before that time to pay such sum to his executors, administrators or assigns; in 1879 Foley assigned all his right, title and interest in this policy to his wife and children. Mrs. Foley died in 1879, and one child, Lizzie, in August, 1885, and the plaintiffs are the other children named in the assignment.

By Mrs. Foley's will she gave and bequeathed all her property to her children, including any unborn child, share and share alike, and also named her husband, John Foley, as the executor of her

will and the guardian of the persons and estate of her children. Letters testamentary were issued to the husband, but no letters of guardianship on the will or otherwise were issued or applied for by him. The trial court, therefore, accordingly found, as a fact, that no letters of guardianship were or had been issued to him under said will or otherwise, and, as a conclusion of law, that he was never legally appointed guardian of plaintiff or of any or either of them.

In 1888 John Foley took the policy to the defendant and surrendered it, as executor and guardian, receiving therefor a check for the sum of $7,229, payable to him, as executor and guardian, and for which he receipted as executor and guardian. This check, after being indorsed by him, as executor and guardian, was indorsed underneath, in his individual name, and deposited in his individual bank account. All of the plaintiffs at this time were under the age of twenty-one years. John Foley, Jr., became of age May 7, 1888, and Madeline in November, 1889. All the other plaintiffs are still minors.

All the premiums on this policy had been paid up at the time of its surrender, and before the commencement of this action an amount sufficient to pay the premiums accruing since the cancellation of the policy by defendant was tendered and refused.

From the judgment of the Special Term, holding that the surrender of the policy by John Foley was illegal and void, this appeal is taken; and to secure a reversal the appellant has urged upon our attention several grounds, all of which were ably disposed of by the court below, leaving, however, a question which strikes at the very right of plaintiffs to maintain this action, and which we deem it proper briefly to consider.

It is insisted that upon the death of Mrs. Foley, an estate in land having become vested in the infant children, the guardianship of these infants, and control of their real and personal estate, with the rights, powers and duties of a guardian in socage, belonged to their father, John Foley, Sr.

If this claim could be maintained, that where, in the absence of any testamentary or other guardian, under the Revised Statutes, the father becomes what might be designated as the statutory guardian

in socage, and as such guardian has control not only of the lands, but also of the personal estate of the infant children, then the right of the father, John Foley, acting in good faith in surrendering the policy, could not be disturbed. In Tyler on Coverture and Infancy (page 235), " it is said there are two kinds of guardianship, one by common law, the other by statute. Guardianship at common law has fallen into comparative disuse in this country, although many of the principles which have entered into that relation are adopted in guardianship by statute."

There were four kinds of guardians at common law, but the only one we need discuss here is the guardian in socage " Guardian in socage arises only when the infant has land by descent, * * * which takes place when socage lands descend to the infant while under fourteen years of age, and ceases when the infant arrives at the age of fourteen years, unless no other guardian is appointed for him." (Tyler, id., 237.)

Under the common law the right and duty of a guardian in socage were originally exclusively confined to real estate, but by degrees it was seemingly extended so as to embrace personal property. This extension of guardianship in socage at common law, though prevalent in England, was not followed in this State, and in the absence of authority or decision it cannot be said that in this State such guardian ever obtained title to or control over personal property of an infant. It is true that GROVER, J., in *Torry* v. *Black* (58 N. Y., 189), says : " A guardian in socage could maintain actions for injuries to the real and *personal estate* of the ward."

We take it, however, that a distinction must be made between the right to preserve property, be it real or personal, including the right to maintain an action therefor, and the conferring of title, as to infant's property, which will enable the holder thereof to legally dispose of or confer title thereto upon another.

What was said in *Wuesthoff* v. *Germania Life Insurance Company* (107 N. Y., 587), in regard to the policy, is applicable here. " It expressed in terms what, in the absence of express words, would be the legal consequence that an obligation for the payment of money to infants may be discharged by payment to a guardian. The qualification that the guardian must be duly authorized to receive the payment is implied. It would be contrary to the nature

and object of the contract to construe it as authorizing payment of a debt due to infants to be made to a person who, although he might, in a formal or even in a legal sense, be a guardian, nevertheless had no authority as such to collect or receive the money or debts due to the ward.    We think it cannot be questioned that the contract to pay the guardian of the infant beneficiaries means a guardian legally authorized to receive and discharge the debt, and that a guardian possessing this authority, whether a general or chancery guardian, a testamentary guardian or a guardian *ad litem*, is, within the meaning of the policy, a guardian to whom payment could be lawfully made."

The question in *Torry* v. *Black* (*supra*), related to the power to commit waste by the statutory guardian of an infant in whom an estate in land becomes vested.    Also in the *Matter of Hynes* (105 N. Y., 560), where the father of certain infants died seized of real estate, the court said : " There can be no doubt of the authority of a guardian in socage to make a contract such as this.    By our Revised Statutes, under the facts in this case, the mother became a general guardian, with the rights, powers and duties of a guardian in socage.    Such a guardian had a right to the possession of the ward's lands and to the receipt of the rents and profits thereof and could maintain ejectment to recover possession of such lands."

In *Emerson* v. *Spicer* (46 N. Y., 596), many of the provisions of the Revised Statutes are referred to and quoted at length : " Guardianship in socage here is entirely regulated by statute    *    *    * such guardianship shall belong, first, to the father of the infant ; second, if no father, to the mother ; third, to others specified."

" To every such guardian, all statutory provisions that are or shall be in force relative to guardians in socage, shall be deemed to apply. The rights and authority of every guardian shall be superseded, in all cases, where a testamentary or other guardian shall have been appointed under the provisions of the statute."

The duties of such guardian are defined by statute, and it will be noticed that they relate to the care, custody and protection of the ward's real estate.    To the suggestion, therefore, that the father, as the guardian in socage, succeeded to the control of the personal property of the infant, two answers may be given.    The statutory guardian in socage in this State has not been regarded as possessing

the same rights and duties as the common-law guardian in socage, and we have been referred to no authority or statutory provision which concedes to such guardian the control or title to the personal property of the infant.

Again, it must be remembered that it is not the rights, powers and duties of a guardian in socage, as they existed at common law, that is to be determined, but such rights, powers and duties as were conferred by statutory provision prior to the enactment of the Revised Statutes. The latter provides that "all statutory provisions that are or shall be enforced relative to guardians in socage shall be deemed to apply."

We have been referred to no statute prior to the Revised Statutes which conferred upon the guardian in socage any right or power over personal property.

Previous to the Revised Statutes a father could not be guardian in socage of his child (*Fonda* v. *Van Horne*, 15 Wend., 631), and plaintiff's only right to be guardian in socage is created by, and his powers and duties regulated by, the Revised Statutes. While, therefore, under the Revised Statutes, a father becomes a so-called statutory guardian in socage, the right and authority of every such guardian are superseded in all cases where the testamentary or other guardian has been duly appointed.

In *Segelken* v. *Meyer* (94 N. Y., 473) it was held that " an action to recover money or personal property belonging to an infant may be brought in the name of the infant by his guardian *ad litem,* although he has a general guardian."

In discussing the question in that case, though not directly involved, a guardian in socage is thus referred to : "As a guardian in socage has to do only with the real estate of the infant, it has been claimed in some cases that the Revised Statutes empower a general guardian to bring actions only in relation to such real estate and the rents and profits thereof, and as to such actions it has been held that they can be maintained by the general guardian only." We think that sufficient has been said to show that the so-called statutory guardian in socage has never been invested in this State with the title or control of the personal property of the infant, but that his powers related and were confined to matters growing out of the real estate of the infant. The surrender, therefore, of the policy by the husband

cannot be justified upon the theory that, as guardian in socage, he had such right.

It is not claimed that, outside of his right as guardian in socage, he had any power to surrender the policy. No letters of guardianship were ever issued to him, and, although he was designated in the will of Mrs. Foley, such appointment being made by a wife in favor of a surviving husband, was invalid; and even though it could be upheld in the absence of the issuance of letters of guardianship, the husband, by section 2851 of the Code of Civil Procedure, had "no power or authority, as guardian of the person or property of an infant by virtue of an appointment contained in the will,   \*   \*   \* unless the will has been duly admitted to probate and recorded in the proper surrogate's office, and letters of guardianship have been issued to him thereon."

We have examined the testimony for the purpose of determining whether the other position assumed by appellant is supported; that the plaintiff, John Foley, Jr., is not, in any event, entitled to any relief, the claim being that, after attaining his majority on May 7, 1888, he acquiesced in and adopted the surrender of the policy by John Foley, Sr., as executor and guardian, to the defendant, with full knowledge thereof, and secondly, by the settlement with his father, John Foley, Sr., after attaining majority, elected not to pursue his remedy against the company, and that such settlement, in particular, constituted a ratification of his father's act in receiving the money.

Such examination does not show that he ever ratified the surrender after he became of age. In the absence of an express ratification, it must be shown that the infant, after becoming of age, has accepted the fruits of the unauthorized act, or in some way benefited by it. Mere acquiescence is not sufficient (*Green* v. *Green*, 69 N. Y., 553); and upon the evidence there is doubt upon the question, even as to whether or not he ever acquiesced. But whether he did or not, as stated, is entirely immaterial, because there is no evidence of any express ratification, nor was it shown that he, in any way, accepted the fruits of, or benefited by the unauthorized act. It is insisted further, however, that by proceedings in the Surrogate's Court, on the basis that the apparent right of his father to act as testamentary guardian was a valid legal right, that Foley, Jr.,

could not thereafter take the antagonistic and inconsistent position which is involved in the maintenance of this action, namely, that his father was not testamentary guardian.

We are not impressed with the force of this suggestion that such proceeding created an estoppel by matter *in pais*, when it is remembered that these very proceedings to compel the father to account as guardian were dismissed upon the ground that he was not the guardian. There might have been much force in the suggestion had it, as a matter of fact, appeared that he was guardian, or had the son, on the theory that he was such guardian, been permitted to proceed in the Surrogate's Court and enforce his claim against his father ; that so far as he individually was concerned, he had elected one of two inconsistent remedies, and was bound by such election. But neither of the proceedings, nor the agreement made between the father and the son, and which enured to the benefit and advantage of all the plaintiffs in this action, present any good reason in law why this action may not be maintained. Had there been, with knowledge of all these facts, an election to pursue the remedy against the father, or had the claim for moneys received been included in the settlement made with the father, then the release which was executed in favor of the father would not only have enured to the benefit of the latter, but, we think, with some justice, could have been urged in discharge of any claim that might have been made against the defendant.

The only remaining question for us to consider relates to the refusal to order a reference for the purpose of determining whether or not such sums as may have been paid by the father might not be availed of by the defendant company as an equitable counter-claim. This right, it is claimed, has been recognized in *Wuesthoff* v. *Germania-Life Insurance Company* (*supra*), wherein it is said : " The defendant on a new trial may be able to show that the money paid to the guardian has been applied in whole or in part to the benefit and support of the infants, under circumstances which entitle the defendant to an equitable counter-claim."

In that case, however, the person to whom the money was paid, and who may have applied some for the benefit of the infants, was not, like the father in this case, under any obligation to support the infant. It is no doubt true, that where a person under no legal

obligation to support an infant pays moneys for its benefit, which may have been received without authority by such person, or where such person out of the infant's own property, without authority, makes expenditures for the benefit of the infants, that the same may be under some circumstances available as a defense, by way of equitable counter-claim, in an action brought by or on behalf of the infant to recover such moneys. We have, however, been referred to no case where a father, who is under a legal obligation to support his children, and who, so far as the testimony shows, was amply able to respond to such obligation, obtains illegally the property of his children, that in an action brought against a person who has unlawfully paid over the same to the father, that this entitles such third person to equitably counter-claim any expenditures made by the father for the benefit of the children.

Upon the entire case we find no good ground for disturbing the judgment, and it should be affirmed, with costs.

VAN BRUNT, P. J., concurred.

Judgment affirmed, with costs.