MARY EAGAN and WILLIAM EAGAN, JR., Infants, by MARTIN EAGAN, their Guardian ad Litem, and WILLIAM EAGAN, Respondents, *v.* SARAH M. SCULLY, Individually, and as Executrix, etc., of PATRICK SCULLY, Deceased, Appellant, Impleaded with Others.

*Real estate conveyed by a minor — circumstances insufficient to establish a ratification — laches.*

A daughter who has, during her minority, conveyed certain real estate to her father, cannot be presumed to have ratified such act after attaining her majority, merely from her acquiescence in expenditures made by her father upon the premises inhabited by him, such as are customary in keeping a homestead in habitable condition, and in a state of good repair, or from the fact that she has permitted her father to occupy the homestead during his lifetime, without asserting her ownership therein, notwithstanding the fact that a long period has elapsed between the date of the conveyance and its disaffirmance, provided that the act of disaffirmance be made within the statutory period of limitation and within a reasonable time after the death of the father.  The question thus presented is one of fact which should be submitted to the jury.

PUTNAM, J., dissented.

APPEAL by the defendant, Sarah M. Scully, individually, and as executrix, etc., of Patrick Scully, deceased, from an interlocutory judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Schenectady on the 9th day of April, 1897, upon the verdict of a jury rendered upon two specific questions of fact, and also from an order denying the said defendant's motion for a nonsuit, and from an order directing a general verdict in favor of the plaintiffs and ordering a sale of the premises described in the complaint.

In May, 1867, Patrick Scully conveyed his house and lot to Mary Margaret and Catherine Scully, his daughters, for the expressed consideration of one dollar; both of his daughters were at that time infants.  On November 9, 1880, the said daughters reconveyed said premises to their father for the express consideration of $625, and thereafter on the 10th of May, 1881, Patrick Scully married the defendant Sarah M. Scully.  Catherine Scully died in 1882.  On May 17, 1883, Mary Margaret Scully married the plaintiff William Eagan, to whom there were thereafter born the plaintiffs, Mary Eagan and William Eagan, Jr.  Mary Margaret died in 1887, leaving her

surviving her husband, William Eagan, and her children, Mary and William Eagan, Jr., the plaintiffs in this action.

Patrick Scully died July, 1894, leaving a last will and testament wherein, after certain legacies, he devised and bequeathed all the rest and residue of his property to the defendant Sarah M. Scully, his widow. The plaintiffs on November 10, 1894, informed the defendant Sarah M. Scully that they disaffirmed the conveyance of November 9, 1880, to Patrick Scully, and thereafter commenced this action in partition, claiming that, at the time of the conveyance of 1880 Mary Margaret Scully was an infant under the age of twenty-one years.

Upon the trial the question of the infancy of Mary Margaret at the time of the conveyance to her father was sharply contested.

The defendant also claimed a ratification by Mary Margaret Scully of the conveyance to her father after she reached her majority, and as evidence of such ratification proved upon the trial that she lived with her father until the time of her marriage in 1883, and that thereafter until her last sickness she was almost a daily visitor at her father's house; and that subsequent to such conveyance, her father from time to time expended money upon the house by way of repairs and alterations, such as repapering, repainting, laying new floors, building a front stoop along the entire frontage of the buildings, making new bedrooms, improving the yard in the rear of the premises, planting fruit trees, etc., all of which it is alleged was done with the knowledge of Mary Margaret, and that no objections thereto were made by her; that she never received any rent of the premises; in short, it may be said that her father in every way treated the premises as his own, with her knowledge.

Two questions were submitted to the jury — the *first* being, was the plaintiff's intestate, Mary Margaret Scully, of the age of twenty-one years when she executed and delivered the deed in question to her father, Patrick Scully? And the other, whether, after she arrived at the age of twenty-one years, she did, with full knowledge of what she had done in the conveying and delivery of the deed, ratify that act of hers? Both of these questions were answered by the jury in the negative, and thereupon the court directed a judgment in favor of the plaintiffs, and from the judgment so entered the defendant Sarah M. Scully appeals to this court.

*Daniel Naylon, Jr.,* and *Edward C. Whitmyer,* for the appellant.

*Michael Foley* and *Robert J. Landon,* for the respondents.

HERRICK, J. :

There was sufficient evidence to sustain the finding of the jury that Mary Margaret Scully was a minor at the time she executed the conveyance to her father, so that the only questions for us to consider are, whether such conveyance was ratified after the minor attained her majority, and whether such conveyance was disavowed in due time.

It is a general rule that a conveyance by an infant is valid until it is avoided by him after arriving at full age, and that he is entitled to exercise his right of avoidance at any time within the term of the Statute of Limitations after his majority. It has been held that mere delay in taking advantage of this privilege will not work a waiver or a ratification, and that ratification is a matter of intention and will not be inferred by a bare recognition of or a silent acquiescence in it, for any time less than the period of statutory limitation. (10 Am. & Eng. Ency. of Law, 649; *Voorhies* v. *Voorhies,* 24 Barb. 150; *McMurray* v. *McMurray,* 66 N. Y. 175; *Green* v. *Green,* 69 id. 553; *Foley* v. *Mutual Life Ins. Co.,* 64 Hun, 63.)

While the acts of an infant after becoming of age may be such as to warrant an inference that he or she intended to ratify the act done during minority, still the inference to be drawn from such acts depends upon surrounding circumstances, and the inference to be drawn from the act of a stranger in blood in permitting his grantee, without objection, to go on and make expenditures for the benefit and improvement of the granted premises, is different it seems to me from the inference to be drawn from the mere acquiescence of a daughter in the expenditures made by her father upon the premises inhabited by him, which seem to be the customary expenditures in keeping a homestead in habitable condition and in a state of good repair. No hostile inference should be drawn from the fact that the child permitted the father to occupy the homestead during his lifetime, without asserting her ownership.

The question is one of fact, and the jury have passed upon it in

this case, and I can see no reason for reaching a different conclusion from the one they did.

While a long period has elapsed from the time of the conveyance to its disaffirmance, yet that act of disaffirmance was made within the statutory period of limitations, and within a reasonable time after the death of the father.

The judgment should be affirmed, with costs.

All concurred, except PUTNAM, J., dissenting, and LANDON, J., not voting.

PUTNAM, J. (dissenting):

I am unable to concur.

In the first place, I think the ruling at folio 136 of the case was erroneous. Had the defendants been able to show that Mrs. Eagan had admitted in her lifetime, and while she was an infant, that Scully paid her $625 as a consideration for the conveyance, such evidence would undoubtedly have been competent. So her written admission contained in the deed was competent to establish the consideration paid. This evidence, I think, was material on the questions involved in the case.

Also, I am inclined to think that the ruling of the trial judge, in allowing the witness Eagan to guess at the age of his wife after it appeared that he knew nothing about it, was erroneous.

I am in doubt whether, under the evidence given in this case, Mrs. Eagan should not be deemed to have confirmed her deed after she arrived at age. It is said that there are three modes of affirmance : By an express ratification ; by the performance of an act or acts from which an affirmance may reasonably be implied; by the silence of the infant after his or her arrival at full age, coupled with his retaining possession of the consideration, or availing himself in any manner of the conveyance, or receiving any benefit thereunder. (See *Kline* v. *Beebe*, 6 Conn. 494, 505.)

In 10 American and English Encyclopædia of Law, 649, it is said : " But acts of the infant after arriving at full age, inconsistent with the assertion of the privilege, or which fairly indicate that he intends to ratify the deed, will prevent him from disaffirming the conveyance."

In this case the infant, after arriving at full age, lived with her

father on the premises in question. She must be deemed to have known that she had transferred the title of the property to her father, and that he was in possession as the owner; that the property was not assessed to her, but was assessed to him. Her father was exercising acts of ownership in repairing and using the premises, and during the period in question she accepted the hospitality and support afforded her by her father in the premises in question. Some of the repairs which it was shown were put on the premises by Scully in her lifetime were not ordinary repairs, but permanent changes in the structure of the building. After her marriage she was frequently a visitor at the premises in question, and knowing that her father had her conveyance of said premises, and was occupying the same as owner, paying the taxes and assessments thereon, repairing the same, she took no step to disaffirm the contract.

Does not the conduct of Mrs. Eagan for about six years after she became of age indicate an intent on her part to affirm the contract, and from the acts above referred to, may not an affirmance be reasonably implied? And after she had thus acted for a period of about six years after she became of age, should her heirs be allowed to disaffirm the deed? To make the voidable deed executed by Mrs. Eagan valid, required no express ratification. A ratification might be shown by acts, by conduct, which indicated the intent of Mrs. Eagan, after becoming of age, to affirm the contract.

It will be observed that in the cases referred to in the prevailing opinion such a state of facts as appears in this case was not shown.

I favor a reversal of the judgment.

Judgment and order affirmed, with costs.

---

NOTE.— The rest of the cases of this term will be found in the next volume, 30 App. Div.— [REP.