(43 App. Div. 17.)

## SMITH et al. v. HAMILTON.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—PURCHASE BY ASSIGNEE AT MORT-
GAGE SALE.
   Where an assignee for the benefit of creditors purchases a part of the
   assigned property on a mortgage foreclosure sale thereof, the title vests
   in him absolutely, subject to repudiation only by the parties interested in
   the estate.

2. SAME—FRAUD.
   Where an assignee for the benefit of creditors purchases a part of the
   property on a mortgage foreclosure sale thereof, actual fraud need not be
   shown by the parties interested in the estate in order to impeach the valid-
   ity of the deed.

3. SAME—ACTION TO IMPEACH—LIMITATIONS.
   Code Civ. Proc. § 388, providing that an action the limitation of which
   is not specifically prescribed must be commenced within 10 years after
   the cause of action accrues, applies to an action to impeach a sale of
   assigned property on mortgage foreclosure to an assignee for the benefit
   of creditors.

4. SAME—WHEN STATUTES COMMENCE TO RUN.
   The right of parties interested in the assigned estate to impeach a sale
   of a part of the property on mortgage foreclosure to the assignee is
   available from the day of the sale, and the statute of limitations com-
   mences to run from that date.

5. SAME—PRESUMPTION OF KNOWLEDGE THAT ASSIGNEE CLAIMS TITLE.
   Where an assignee for the benefit of creditors purchases a part of the
   property on a mortgage foreclosure sale, the presumption is that knowledge
   that such assignee was claiming title in himself came to the parties inter-
   ested in the assigned property at the date of the sale, and the burden is
   upon them to show that they were not apprised of his claim until a later
   date.

6. SAME—INCEPTION OF RIGHT TO IMPEACH.
   Where no actual fraud has been committed, the inception of the right of
   parties interested in the estate to impeach a sale of a part of the property
   on mortgage foreclosure to the assignee is not dependent on their knowl-
   edge that such assignee was claiming title in himself.

Appeal from judgment on report of referee.

Action by Emily C. Smith, as executrix of Emily C. Smith, de-
ceased, and George R. Smith, against William Hamilton, to account,
as assignee, for assigned property purchased by him at mortgage
sale. From an interlocutory judgment in favor of defendant, plain-
tiffs appeal. Affirmed.

The defendant was appointed the assignee of the plaintiff George R. Smith,
in trust for the benefit of his creditors, December 9, 1884, and at once entered
upon the performance of the trust. Included in the property conveyed to
him as assignee was a flouring mill at Honeoye Falls, Monroe county, which
he carried on by order of the court in the prosecution of the assignment. There
was a mortgage of $15,000 which was a subsisting lien on said property at the
time of said assignment, and which also was an incumbrance upon other prop-
erty situate in the town of Wheatland, in said county, owned by the plaintiff
Emily C. Smith and her mother, of the same name, of whose will the daughter
is sole executrix. In 1886 an action to foreclose this mortgage was commenced,
was prosecuted to judgment, and a sale of both parcels of land was had on
the 24th day of May, 1887. One Holden, at this sale, purchased the property
in the town of Wheatland, evidently for the plaintiffs Smith, and on the same
day the defendant purchased the flouring-mill property for $8,000. On the day
of sale he paid on the purchase price $800, and on the 26th day of the month

paid the balance thereof, and received the deed of the premises. On the 25th he entered into possession of the ·purchased premises, and immediately began extensive improvements thereon, and since that time has been in the undisturbed possession thereof, assuming to own the same, and has expended in improvements thereon over $28,000. He bid off and paid for these premises out of his own money, and intended to make the purchase for himself individually. The entire assigned estate then in his custody was only $545.06. This action was brought to require the assignee to account for the assigned property, including that claimed to be purchased by him. The defense of the 10-years statute of limitations was interposed, but only as to the mill property. By stipulation of the parties, the accounting has been deferred to await the determination of the question whether the mill property is still a part of the assigned estate.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

William De Graff, for appellants.
George F. Yeoman, for respondent.

SPRING, J. It may be assumed that Hamilton, in purchasing this property, was acting in antagonism to his trusteeship. This did not render the sale void. The title was vested in him absolutely, subject to repudiation by the parties interested in the estate intrusted to him. They alone could assail it. Read v. Knell, 143 N. Y. 484, 39 N. E. 4. It was not incumbent upon them to show actual fraud to impeach the validity of the deed to the defendant. Their cause of action is based upon the act of defendant in making the purchase in contravention of his fiduciary relation. Yeoman v. Townshend, 74 Hun, 625, 26 N. Y. Supp. 606. The Code does not, in specific terms, provide how long these parties may have in which to avail themselves of their right to impugn the sale. The 10-years limitation therefore applies. Code Civ. Proc. § 388; In re Rogers' Estate, 153 N. Y. 316, 47 N. E. 589; Gilmore v. Ham, 142 N. Y. 1, 36 N. E. 826. That section provides that an action within its purview "must be commenced within ten years after the cause of action accrues." The turning point in this case is to determine when the cause of action was first available to the plaintiffs. Did it accrue when the defendant made his bid, and paid the $800, or at the date of the delivery of the deed, or even subsequent to that event? If the 10 years commenced to run on the day of the sale, then this action, which was commenced May 25, 1897, was one day too late. There is no pretense that the defendant intended to perpetrate a fraud upon the plaintiffs. He was by far the heaviest preferred creditor of his assignor. Nine-tenths or more of the estate upon distribution will pass to him. He bid to protect himself, believing he was acquiring an indefeasible title. He paid $8,000 in cash, of his own money, which was applied in reduction of the foreclosure judgment. The fairness of the sale itself is unimpeached. He was the highest bidder at a sale evidently advertised and conducted in the usual public way. The plaintiffs, within a month after the sale, acquired by purchase the residue of the property sold by virtue of the same foreclosure judgment. So they are not gainsaying the regularity and openness of the sale itself. In the action he was a defendant as assignee and individually. The judgment was in the usual form,

"barring and foreclosing all right, title, and interest and equity of redemption" in the mortgaged premises, and permitting any party to bid. The title vested in the purchaser was that of the mortgagor and mortgagee combined, and wiped out that of the assignee. Packer v. Railroad Co., 17 N. Y. 283; Thom. Mortg. § 1013; Rector, etc., v. Mack, 93 N. Y. 488. That ended his relationship with that property as trustee of an express trust. His title was subject to attack by the cestuis que trustent. If they did not interfere, his ownership was unassailable. At best he was only a trustee ex maleficio. Constructive fraud alone was imputable to him. His sinning is due to his position. Where a trust arises by implication, or where the fraud charged is not active, but constructive merely, the statute is operative from the time the wrong was committed. Lammer v. Stoddard, 103 N. Y. 672, 9 N. E. 328; Yeoman v. Townshend, 74 Hun, 625, 26 N. Y. Supp. 606; Price v. Mulford, 107 N. Y. 303, 14 N. E. 298. When the premises were struck off to him, and he paid the $800 provided by the terms of sale, he acquired a right in the property. He could enforce the conveyance, assign his bid, and was burdened with the liability to pay the balance of the purchase price. In case of a failure to complete his purchase, he was liable for the taxes accruing before the resale, and for any deficiency that might accrue. Ruhe v. Law, 8 Hun, 251; Chase v. Chase, 15 Abb. N. C. 91. That act terminated the equity of redemption. The mortgagors could not pay up, and take the property. Thom. Mortg. § 1020. That right is akin to that possessed by these plaintiffs. It is intangible until galvanized into life by those entitled to assert it. The only physical impairment to the title of a purchaser at a foreclosure sale antecedent to the deed, or the rights which flow from it, is, he cannot oust the mortgagor of possession. The indicia of title are essential to enable him to accomplish that; but, so far as his right to the deed is concerned, it is unqualified, and when the deed is delivered it relates back to the date of the bid, and his obligations and benefits are governed primarily by the terms of sale accepted by him on that date. Again, on the day the mill property was struck off to the defendant, the cestuis que trustent could have commenced an action to nullify the purchase, or to decree that he took the title as trustee, or by motion to vacate the sale. This right to intervene arises from the fact he was purchasing in hostility to the trust. He had already perpetrated an act inconsistent with his fiduciary relation by which he had acquired a property right, and the estate had lost one. The fact that plaintiffs could obtain its abrogation does not impair the force of the proposition, for affirmative action was necessary to insure the devolution of the premises to the defendant as assignee. It accordingly seems clear that the wrong was done on the day of sale, and the plaintiffs' right to attack the purchase had its inception on that date. Hubbell v. Medbury, 53 N. Y. 98, is not in conflict with this position. The purchaser at that sale immediately took possession of the premises, and the court held the liability accrued as soon as he went into possession asserting his individual right thereto. The fact of the sale itself was not in question, for more than 10 years had elapsed since the purchaser had been notoriously in occupa-

tion, claiming title in himself. In Nutt v. Cuming, 155 N. Y. 309, 49 N. E. 880, cited by appellants' counsel, the defendant held a lien subordinate to that of the mortgage foreclosed. Ten years had not expired since the rendition of his judgment at the date of the entry of the foreclosure judgment. Four years intervened this date and the sale and conveyance, and, in the meantime, the 10-years limitation had run on the judgment of defendant. The court decided there was no lien on the surplus moneys arising from the sale, as only liens existing at the time of the sale attach to the surplus. The right of the purchaser was not involved, and the rule of practice providing that a person with a lien at the time of the sale is entitled to participate in the surplus moneys was quoted to uphold the principle that the judgment of defendant was not a lien.

It is urged that the plaintiffs' cause of action did not become ripe until they had knowledge that Hamilton was asserting title in himself individually. The presumption is, the knowledge came to them the date the wrong was perpetrated. The burden was upon them to show the fact that they were not apprised of his claim until a later date. Mason v. Henry, 152 N. Y. 529–539, 46 N. E. 837; Baldwin v. Martin, 14 Abb. Prac. (N. S.) 9. But the inception of the cause of action is not dependent upon knowledge in plaintiffs where no actual fraud has been committed. That date is an arbitrary one, prescribed by the Code. While the obvious aim of the courts is to bring each right of action within some definite Code limitation, yet it is a drastic constriction of the powers of a court of equity to hold that the plaintiffs could recover in this suit irrespective of the statutory limitation. They were parties defendant in the foreclosure suit. They lived near the mill property, and must have known of the purchase made by the defendant, and of the extensive improvements he was making. They knew he was principally interested in the assigned estate, and yet it was not until unexpected value was imparted to the property by the acquisition by the city of Rochester of certain water rights that they made any claim the defendant was holding as assignee. After this long acquiescence, and after this apparent assent to defendant's purchase, and after their failure to interfere until he had expended a large sum in improving the property, and when the wheel of fortune gave this new unforeseen value to it, they might well be said to have allowed their rights to become too dormant to be aroused. The defendant had paid $8,000 to apply in payment of a subsisting lien on the property, and yet these plaintiffs make no offer to reimburse him for that sum; and they knew he must have paid that individually, for they were aware of the small sum he held as assignee. They have received the benefit of the payment of the mortgage debt the same as if it had been paid to them individually. The equities are overwhelmingly with the defendant.

The interlocutory judgment is affirmed, with costs to the respondent. All concur.