## CAHILL v. SEITZ et al.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. LIMITATIONS—CONSTRUCTIVE FRAUD—ACCRUAL OF ACTION—DISABILITIES—INFANCY.

Under Code Civ. Proc. § 388, providing that an action, the limitation of which is not specially prescribed, must be commenced within ten years after the cause of action accrues, and section 396, providing that the time of disability is not a part of the time limited for commencing an action, but that in any case the time limited cannot be extended more than one year after the disability ceases, an action in favor of an infant, arising from a constructive fraud of her guardian in socage in purchasing the trust property on foreclosure sale, accrued at the time of the sale, and was outlawed one year after the cessation of the disability of infancy; the ordinary limitation of ten years having expired during infancy.

2. SAME—INFANTS.

The doctrine that a person has a reasonable time after reaching majority in which to disaffirm or ratify acts performed during infancy does not give an infant a time other than that specified by limitations to attack a constructive fraud of his guardian in purchasing the trust property at foreclosure sale.

3. VENDOR AND PURCHASER—BONA FIDE PURCHASERS—NOTICE OF DEFECT.

Bona fide purchasers for value, without notice of the fact that one through whom they claimed purchased the property while guardian in socage of its owner, are protected against the claim of such owner to the property.

4. SAME—RECORDS—FACTS PUTTING ON INQUIRY.

A judgment roll in a foreclosure action, wherein a guardian in socage bid in the property, which showed that the owner was an infant, that her mother and father had died intestate, and that she lived with such guardian, who was her paternal uncle, and had no other guardian, did not impose on grantees of the guardian the duty of inquiring and learning that the guardian was the nearest and oldest of the owner's relatives, so that the law had cast upon him a guardianship in socage, which made improper his purchase of the premises.

5. SAME—RELATIONSHIP OF PARTIES.

The fact that the paternal uncle of an infant, with whom she was living, bid in her property at a foreclosure sale, was not sufficient to excite inquiry as to any impropriety in his conduct in purchasing the property.

6. SAME—NECESSITY OF INQUIRY—REASONABLE DILIGENCE.

On the question of notice of irregularities in title, it is not the fact that the purchaser could have discovered the existence of irregularities which

86 N.Y.S.—64

deprives him of the character of a bona fide purchaser, but whether, in the exercise of ordinary prudence, the purchaser was called upon, under the circumstances, to make the inquiries.

Appeal from Equity Term, Erie County.

Action by Mary C. Cahill, suing as a poor person, against Lena Seitz, individually and as administratrix of Gottleib H. Seitz, deceased, and others. From a judgment dismissing plaintiff's complaint, she appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Yorke Allen, for appellant.

Charles Diebold, Jr., for respondents Western Savings Bank of Buffalo and others.

George M. Browne, for respondents Lena Seitz and others.

HISCOCK, J. This action was brought to impress a trust upon certain premises in the city of Buffalo formerly owned by plaintiff and certain brothers and sisters. The action was founded upon the claim that while said persons, being infants, were the owners of said premises, the same were sold upon a foreclosure, and that upon such foreclosure the same were bid in, in his own name and right, by the defendant John Cahill, and that said Cahill, in so doing, acted in violation of the fiduciary relations which he then sustained to said infants as their guardian in socage. Various defenses were urged, and made the basis of the motion for a nonsuit which was granted by the learned trial justice. There is nothing to indicate upon which of the grounds he based his decision, but we think that the judgment appealed from must be affirmed upon the reasons, first, that plaintiff's cause of action was barred by the statute of limitations when she commenced her action; and, second, that the defendants who now own or have liens upon the premises in question acquired the same as bona fide purchasers or incumbrancers for value, without notice of any defect in the title. We shall discuss the questions involved in these two defenses in the order stated.

Plaintiff was born August 18, 1873. March 27, 1876, her mother, Ann Cahill, died intestate, seised in fee of the premises in question. Besides her husband, she left, her surviving, the plaintiff and three other infant children. The husband and two of the children, still being infants, died soon thereafter. The premises were subject to a mortgage for $500, which was foreclosed, resulting in a sale of the property May 29, 1879, to the defendant John Cahill for $685.72. They are said to have been worth at the time in the neighborhood of five or six thousand dollars. Plaintiff at the time resided with said John Cahill, who was her uncle, and who, we shall assume, for the purposes of this discussion, was her guardian in socage. The deed was promptly recorded, and between 1879 and 1887 Cahill was in possession of the property, collecting the rents thereof. In 1887 he sold the premises to the defendant Seitz for a consideration now claimed to have been $3,200. Seitz divided the tract into five parcels, and at various times thereafter, and during the infancy of the plaintiff, sold these parcels, respectively, to various persons, who are defendants,

and all of whom, with one exception, continued to hold at the time of the commencement of this action. Various mortgages upon these parcels, however, were executed, after plaintiff ceased to be an infant, to various defendants, respectively, who still continue to hold the same. When plaintiff was 12 years of age the property was pointed out to her, and she was told that it was hers, and that her uncle, the defendant Cahill, was caring for it. When she was 14 she knew and understood perfectly well that this property had been sold by her uncle, and that he had the proceeds, which belonged to her. This she always knew, and did not forget. When she was 21 years of age, her uncle told her about the investment of the proceeds of the property, and that he had been having some trouble. When she was 18, somebody, in her behalf, wrote for her share of the proceeds, and learned that her uncle had invested it in real estate in New York, which he thought the city would buy at some time for a large sum, but he did not know when. Evidence was given of various acts of plaintiff, from which it was urged that she had ratified and affirmed the conduct of her uncle in dealing with this property, and which we do not regard it necessary to discuss, in view of our intention to dispose of the case upon other grounds. Plaintiff became of age August 18, 1894. This action was commenced April 25, 1902. The purchase by Cahill occurred in 1879.

Upon the assumption that Cahill was a guardian in socage of plaintiff, it seems to be conceded that his act in purchasing the property of herself and her brothers and sisters upon the foreclosure sale in his own name was a violation of the obligations imposed upon him by such guardianship. We apprehend that there could be no reasonable question about this, for there existed in this case none of those facts which in the case of Boyer v. East, 161 N. Y. 585, 56 N. E. 114, 76 Am. St. Rep. 290, were held to make it improper for the guardian in socage to bid in in her own name the property belonging to her cestui que trust. There seems, also, to be no question but that the limitations governing the commencement of this action are those found in section 388 of the Code, which, in substance, provides that an action, the limitation of which is not specially prescribed, must be commenced within 10 years after the cause of action accrues. It is also plain and conceded that from May 29, 1879, to August 18, 1894, plaintiff was under the disability of infancy, and therefore entitled to the benefits of section 396 of the Code, providing, in substance, that the time of such disability is not a part of the time limited for commencing an action, "except that the time so limited cannot be extended more than five years by any such disability, except infancy, or in any case more than one year after the disability ceases." The disagreement between the parties arises over the question when plaintiff's cause of action accrued; it being claimed by the defendants that this took place when defendant Cahill bid in the property, in 1879, and by the plaintiff that it did not take place until after plaintiff reached her majority. If the first contention is correct, there can be no doubt but that plaintiff had lost her rights before she commenced her action. The ordinary limitation of 10 years would have expired in 1889, and, by virtue of the exception in her favor on account of her infancy, the limitation would have been extended for 1 year after she became of age, or until August 18, 1895.

We think that the interpretation of the law urged by defendants to be applicable to the facts before us is the correct one. The act of Cahill in purchasing the property was one of constructive, as distinguished from actual, fraud. It was voidable, as matter of law, because of the relations which existed between the purchaser and the plaintiff, and it was not necessary to its avoidance to show actual fraud or injury. Unless a rule is to be applied to plaintiff's cause of action different from that which would govern an analogous right of action in favor of an adult, there is no doubt that the cause of action accrued at the time of the sale and purchase by the guardian.- Yeoman v. Townshend, 74 Hun, 625, 26 N. Y. Supp. 606; Smith v. Hamilton, 43 App. Div. 17, 59 N. Y. Supp. 521; Hecht v. Slaney, 72 Cal. 363, 14 Pac. 88.

It is urged by the learned counsel for the appellant that a different rule is so applicable. He says, in substance that Cahill's act was subject to ratification or disaffirmance; that the operation of ratifying a voidable act presupposes a ratifier capable of making a binding election; that an infant is not capable of making a binding election, and therefore plaintiff's right of action to disaffirm her guardian's act could not accrue until she obtained her majority, in 1894; and that therefore the statute commenced to run from that time. In support of his views he cites passages from opinions in various cases involving the right of a person to disaffirm and repudiate a conveyance made by him of real estate during infancy, to the effect that such a conveyance by an infant is valid until it is avoided by him after arriving at full age. It may be conceded, of course, that a person may not, until he reaches full age, perform acts which will constitute an effective ratification of a voidable transaction occurring during infancy. It is a doctrine familiar, and oftentimes expressed in a somewhat popular form, that a person has a reasonable time after reaching majority in which to disaffirm or ratify acts performed during infancy. The more frequent and important application of this rule is sought in endeavors to demonstrate in various cases that because a former infant has not, within a reasonable time after reaching full age, disaffirmed an act, he is therefore to be regarded as having affirmed and ratified it. While it is true that ratification of acts voidable as against an infant must be found in something done after majority, we do not believe that a converse principle applies, which, in such a case as this, prevents a person, while still an infant, from diaffirming a voidable act performed by another against his rights, and from seeking redress by action against the same.

The cases relied upon by counsel for the appellant, as suggested, treat of the right of disaffirmance and avoidance of a conveyance of real estate executed by the former infant himself. Without going into a full discussion of the reason for the application of such rule to such cases, it may be stated as a practical consideration that no harm could come from its enforcement. A deed executed by an infant would be vulnerable at any time, even as against a purchaser for value, and there would be no difficulty in a recovery by the grantor of his property, even if action was delayed until he became of age. This rule, however, postponing the right of disaffirmance by a former infant until majority, has not been extended to any such case as

is now before us.   In fact, in the case of Beardsley v. Hotchkiss et al., 96 N. Y. 201, 211, it is stated that a deed of land, as well as a conveyance of personal property, will be deemed to be ratified unless it is disaffirmed by the infant before he arrives at age, or within a reasonable time thereafter.   In cases affecting rights other than those involved in a conveyance by the infant himself, it is well established that, without waiting for majority, an infant may disaffirm and seek redress against acts performed to his injury.   Petrie v. Williams, 68 Hun, 589, 595, 23 N. Y. Supp. 237;  Sparman v. Keim, 83 N. Y. 245; Matter of Rogers, 153 N. Y. 316, 47 N. E. 589;  Eagan v. Scully, 29 App. Div. 617, 51 N. Y. Supp. 680.   In the case last cited, and upon an expression in which reliance is had by plaintiff's counsel for his argument upon this point, plaintiffs were allowed to recover in an action brought while they were still infants in disaffirmance of a conveyance executed by their ancestor while an infant.   The successful prosecution by infants of actions seeking to establish various kinds of rights is so familiar as not to require comment or discussion. We cannot believe that there is any legal or practical reason for holding that an infant must delay until reaching full age before disaffirming an act performed by a guardian against his rights, or that he must delay proceedings to secure his interest in the property which may be the subject of such an act until, in all probability, it shall have passed to others, and beyond his reach.

We therefore hold, upon this branch of the case, that plaintiff's right of action accrued in 1879, that she was entitled to enforce it then, and that, under the circumstances of this case, the only benefit which she obtained under the exception in the statute of limitations was the extension of the year after 1894 in which to commence her action.

We come to the second defense—that the defendants at present owning the real estate are bona fide purchasers for value, without notice, and therefore protected against plaintiff's claim.   If they are such bona fide purchasers or incumbrancers, and without notice, they are so protected.   Harrington v. Erie Co. Savings Bank, 101 N. Y. 262, 4 N. E. 346.   The plaintiff's counsel admits this, but says that they are to be charged with knowledge of certain facts appearing in the judgment roll in the foreclosure action, where Cahill bid off the property, and which facts were sufficient to charge them with knowledge of Cahill's guardianship in socage, and therefore with the defective title which was being obtained.   In this discussion we shall agree with the counsel that said defendants are to be charged with knowledge of the facts which did appear in said judgment roll, and we shall also agree with him as to the nature of those facts.   They were that plaintiff was an infant, and that her father and mother had died intestate;  that at the time of the foreclosure action she was living with Cahill, who was her paternal uncle;  and that she had no general or other guardian.   We feel constrained to differ with him, however, when we proceed further to his contention that these facts bound subsequent grantees, at their peril, to inquire and learn whether Cahill was the nearest and oldest of plaintiff's relatives, so that the law had cast upon him a guardianship in socage, which made im-

proper his purchase of the premises. The rule claimed, and to which we assent, is that "an intending purchaser * * * must be presumed to investigate the title, to examine every deed or instrument forming a part of it, especially if recorded, and to have known every fact disclosed, or to which an inquiry suggested by the record would have led." The requirement is for the exercise of a "reasonable care and diligence of a good and faithful expert" in the business of examining titles. While the rule charging people with knowledge of the law includes principles which are complex, obscure, and of infrequent application, as well as those which are simple and familiar, we do not think it is out of the way, in the consideration of what was a reasonable diligence in reference to this title, to bear in mind that a guardianship in socage comes by operation of law, rather than by express appointment; that it is of comparatively infrequent occurrence, and seldom becomes an important element in the transmission of titles. An attorney of average experience and expertness in examining a title might very well fail to direct his mind to the possibility of such a guardianship. We see nothing in the facts disclosed by the judgment roll, that Cahill was the uncle of and temporarily harboring plaintiff, who was an infant and an orphan, to suggest that he was her oldest and nearest relative, and therefore her guardian by operation of law. It seems to us that the facts disclosed were entirely negative upon this subject. It might just as well be thought that he was the youngest as well as the oldest uncle. In fact, the evidence given by plaintiff herself upon the trial was not altogether too clear upon this point. Neither do we think that there was anything in the purchase by Cahill of this property upon the sale which was reasonably calculated to excite inquiry and lead to information. The presumption is in favor of legal conduct, and not in favor of violations of obligations. To our mind, it was more natural for subsequent grantees to assume that Cahill, in purchasing this property, acted rightfully, and with the intention, on account of his general relationship to plaintiff, to deal with and administer the property for her ultimate benefit, than it was for them to suspect that he was so purchasing in violation of his obligations as a guardian, and to the final detriment and injury of the plaintiff. In connection with the rules already adverted to, we must keep in mind others construing and limiting the potency of facts appearing in a record to suggest to an intended purchaser the necessity of inquiring and seeking for other information which does not so appear in the record. "If the facts within the knowledge of the purchaser are of such a nature as in reason to put him upon inquiry, and to excite the suspicion of an ordinarily prudent person, and he fails to make some investigation, he will be chargeable with that knowledge which a reasonable inquiry, as suggested by the facts, would have revealed." The question is not whether the defendant purchasers could have discovered the existence of the guardianship in socage by any inquiry, but it is whether, acting as ordinarily prudent persons would have done, they were called upon, under the circumstances, to make the inquiries. Were the circumstances such as to necessitate the making of some inquiry, at the peril of being charged with the knowledge of some

then unperceived fact?　Anderson v. Blood, 152 N. Y. 285, 46 N. E. 493, 57 Am. St. Rep. 515. Within these principles, we feel that there was not sufficient cause in the facts appearing in the judgment roll to reasonably excite upon the part of purchasers that suspicion and inquiry which might have led to ascertainment of the fact of Cahill's guardianship.

In accordance with these views, we think that the judgment appealed from should be affirmed.

Judgment affirmed, with costs.　All concur; WILLIAMS, J., in result.