SETH BAKER et al., Respondents, *v.* JOHN J. LEVER et al.,
Appellants.

Where a vendee has been induced to purchase property by means of fraud
    on the part of the vendor, mere want of diligence in discovering the
    fraud, does not deprive the vendee of his right to rescind because
    thereof; he owes the fraudulent vendor no duty of active vigilance,
    and if he acts promptly after actual discovery of the fraud, he has a
    perfect right to rescind.

*It seems* that, as a general rule, a delay to rescind, after discovery of the
    fraud, does not operate as a waiver of the right, or as a confirmation of
    the fraudulent contract.

One to whom a bond and mortgage, given to secure the price of property
    upon a fraudulent sale, is assigned without any pecuniary consideration
    being paid but simply as a gift, does not occupy the position of a *bona fide*
    purchaser, so that the contract cannot be rescinded as to him.

(Submitted October 6, 1876; decided November 14, 1876.)

APPEAL from judgment of the General Term of the Supreme
Court in the fourth judicial department, modifying a judgment
entered upon the report of a referee.   (Mem. of decision below,
5 Hun, 114.)

This action was brought to have a bond and mortgage
executed by plaintiff to William J. Lever, originally one of
the defendants herein, and whose personal representatives are
now parties defendant, declared void, and that the same be
set aside and canceled of record.   The referee found the fol-
lowing facts:

That in March, 1869, the plaintiff Seth Baker applied
to William J. Lever to learn where a loan of some money
could be made, and was by him informed that his son (the
defendant John J. Lever) had $500 which the latter might
loan; that afterwards said plaintiff called upon the father
and son and then understood from them that the loan of
$500 would be made by John J. Lever, to him, if he would
purchase of William J. Lever certain capital stock of the
Andover Woolen Manufacturing Company; that Baker

agreed to purchase six shares of $100 each, of said capital stock, for the sum of $500, and thereupon the said John J. Lever loaned to him the sum of $500, and .the said William J. Lever sold to him the said stock, and delivered to him certificates thereof, with transfers to him indorsed·thereon, and the plaintiff Seth Baker, on the 15th of March, 1869, executed his bond to the defendant John J. Lever, conditioned for the payment of the $500 loaned, and interest, and with his wife Elizabeth the plaintiff Baker executed a mortgage to secure the payment of the said bond to the said John J. Lever, and at the same time the said plaintiff Seth Baker executed his other bond of that date, conditioned for the payment to William J. Lever $500 (the price of such stock) and interest, and with his said wife executed a mortgage to the said William J. Lever, who afterwards, on the 17th day of March, 1869, assigned the same to his son, the defendant John J. Lever as a gift or advancement to him, as was contemplated and understood when the loan and sale of stock were made as aforesaid, which last mentioned bond and mortgage are the ones in question. That at the time of the sale of the said stock to Baker, he believed that it was worth the price he agreed to and did pay therefor; that in fact, the said stock was then worth and saleable for only the sum of thirty per cent of its nominal value, and continued saleable for that sum for the period of four months thereafter; and that afterward the property of the said company was sold and the proceeds thereof were not more than sufficient to pay liabilities of the company, and said stock and all the capital stock of the company became and was thereafter actually worthless. That the said Andover Woolen Manufacturing Company was organized in 1866; that said William J. Lever was one of the original subscribers to the capital stock, and had been a stockholder from that time; that he was president of the company from 1867 to May, 1868, and at the time of the sale by him of the said stock to the plaintiff, he was familiar with and knew the condition of the company; that up tc that time the business of the company had been operated at

a loss, and he was advised that the liabilities of the company, exclusive of the capital stock, nearly equaled the value of its property, real and personal, and the plaintiff was ignorant of the actual condition of the affairs of the company ; that the value of the stock, the valuation and prospect of the company were at the time of the negotiation and sale in question the subject of conversation between the plaintiff and the said William J. Lever, and the latter then suppressed and omitted to state to the plaintiff the facts in relation to the situation of the company of which the said William J. Lever had knowledge, and thereby induced the plaintiff to believe and understand that the value of the said six shares of stock was $500, and those facts within the knowledge of the said William J. Lever, which affected the value of the said stock, were then suppressed by the latter with the intent and for the purpose of inducing the plaintiff to make the purchase at the price aforesaid, and the latter was thereby induced to make the purchase and give the bond and mortgage aforesaid, and that such transaction was fraudulent on the part of the said William J. Lever. That the plaintiff, Seth Baker, has held the said stock since such transfer, and on the 16th day of November, 1872, he offered to return and deliver the certificates to William J. and John J. respectively, and tendered the same and offered to make transfers thereof to such one of them as they might advise or direct, and demanded that the said bond and mortgage be surrendered up and canceled; that the defendants, and each of them, refused to accept the return and transfer of the said stock, and the said defendant John J. Lever also refused to surrender up or cancel the said bond and mortgage.

The referee found, as conclusions of law, among other things :

That the said sale of the stock, the price of which the said bond and mortgage were given to secure, was fraudulent on the part of the said William J. Lever. That on the 16th day of November, 1862, the plaintiff was not entitled to a surrender and cancellation of the said bond and mortgage

upon the demand thereof then made by him; but that he would then have been entitled to such surrender and cancellation if he had then tendered or offered to pay to the defendant, John J. Lever, $180 and interest thereon, from March 15, 1869, less two payments of thirty-five dollars each, applied as of the time they were made respectively. That on payment to the said John J. Lever of the sum produced as last aforesaid, amounting at the date of this report to $160.27, with interest thereon from the date hereof, and the defendant's costs of this action, the said plaintiff will be entitled to have the said bond and mortgage delivered up and canceled; and, if the said mortgage has been or shall be recorded, then upon such payment the plaintiff will also be entitled to have satisfaction thereof acknowledged and the said mortgage satisfied of record.

The General Term adjudged that the judgment be reversed so far as it required the payment of thirty per cent and costs, and that the judgment be modified and entered that the bond and mortgage described in the complaint are fraudulent and void; and that the same be delivered up to the plaintiff Seth Baker, and canceled, and that the defendant John J. Lever execute and deliver satisfaction of the mortgage to said Seth Baker.

*James H. Stevens, Jr.,* for the appellants. The delay of four years in offering to rescind was a confirmation of the contract. (*Fisher* v. *Friedenhall,* 21 Barb., 82; *Roth* v. *Palmer,* 27 id., 654; *Mattawan Co.* v. *Bentley,* 13 id., 644; *Wheaton* v. *Baker,* 14 id., 594; *Voorhies* v. *Earl,* 2 Hill, 288; *Kennedy* v. *Thorp,* 51 N. Y., 174; *Bk. of Beloit* v. *Beale,* 34 id., 475; *Goss* v. *Mather,* 2 Lans., 285; *Baker* v. *Robbins,* 2 Den., 138; *Baker* v. *Spencer,* 47 N. Y., 562; *Ross* v. *Titterton,* 6 Hun, 284; *Bruce* v. *Davenport,* 1 Abb. Ct. App. Dec., 237; *Upton* v. *Tribilcock,* 13 Alb. L. J., 27.) Lever being an innocent purchaser for value of the bond and mortgage, as against him the right to rescind could not exist. (*Winne* v. *McDonald,* 39 N. Y., 240; *Dows* v. *Greene,*

24 id., 644; *Fassett* v. *Smith*, 23 id., 252; *Lacker* v. *Rhodes*, 45 Barb., 499.)

*Hamilton Ward* for the respondents. A person deceived by the fraudulent misstatements of another owes him no duty of active vigilance in the discovery of the fact that they are false. (*Baker* v. *Spencer*, 47 N. Y., 562; *Ketchum* v. *Traxwell*, 7 Alb. L. J., 137; *Brown* v. *Post*, 1 Hun, 304; *Neblett* v. *McFarland*, Alb. L. J., Feb. 19, 1876, p. 134.)

Miller, J. The referee held upon the trial that the sale of the stock at the price which the bond and mortgage was given to secure was fraudulent and void, and adjudged, that on payment of the market value of the stock at the time of the sale and interest and with defendant's costs of the action, the bond and mortgage be delivered up and canceled. The intent to defraud follows as a necessary result of the decision, and as no appeal was taken from the judgment by the defendants it must be assumed that they acquiesced in the right of the plaintiffs to relief from the fraudulent contract. If entitled to any relief it was not a partial one but to an entire exemption from the fraudulent claim. A failure of the plaintiffs to do all which the law required in order to rescind the contract would be a complete bar to any recovery. The rule on this subject is well established, that when a sale is fraudulent the party defrauded has a perfect right to rescind the contract, and to be restored to his former condition in all respects, upon offering to return the property purchased promptly after the fraud is discovered. None of the authorities to which we have been referred hold that a delay to rescind until a discovery generally operates as a waiver of the right to rescind or as a confirmation of a fraudulent contract. While cases may perhaps arise where the circumstances attending the delay are such as to deprive the party of his right to rescind, after he has ascertained that a fraud has been perpetrated, this is not the general rule. It is quite sufficient that an effort to return the property is made after the discovery of the fraud. We have

a right to assume, in support of the judgment in this case, that the sale was fraudulent and void, that a proper offer was made in due season and that there was no laches in this respect. The referee has found that the plaintiff who purchased the stock had opportunities to and might have with reasonable diligence ascertained the situation of the company in time to have tendered or offered the return of the stock and while it had a market value, and he was guilty of laches by omitting to do so within that time. This was not enough to show knowledge of the fraud, and not sufficient to bar the right of the plaintiffs to avail themselves of it. It might well be that opportunities to ascertain the fraud would be of no avail to a person unfamiliar with the business transactions of corporations, as was probably the fact here, and the authorities do not hold that a mere want of diligence without knowledge of the fraud is sufficient to deprive a party of his legal right to rescind a fraudulent contract. Something more is required and courts will not for this reason alone avert the consequences of a fraudulent act. In *Brown* v. *Post* (1 Hun, 303), it was held that a person deceived by the fraudulent misstatements of another owes him no duty of active vigilance in the discovery of the fact that they are false, and that there is nothing in the law requiring him to be protected from the consequences of his wrong, because the person imposed upon did not suspect him, and adopt some means to discover the imposition. This case was affirmed in this court on the opinion in the court below. (62 N. Y., 651; see also, *Baker* v. *Spencer*, 47 id., 562.) Knowledge of the fraudulent act is generally required, and bare suspicion is not enough. We have been referred to the *dicta* of judges where the doctrine is laid down that the rescission must be made after the party has had reasonable opportunity to discover the fraud, and that vigilance and care must be exercised. (*Ross* v. *Tilterton*, 6 Hun, 284; *Septon* v. *Friltlock*, 13 Alb. L. J., 27.) But these cases must be considered in connection with the facts there presented, and do not establish any general rule applicable to all cases. More especially are these decisions inapplicable where the judgment

sustains the allegation of fraud and gives partial relief on account of the same. It may also be remarked that the fact that the stock had a market value within four months after the sale is not material, so long as it was intrinsically worthless, and does not authorize a deduction by way of mitigating the loss of the party defrauded. (*Hubbel* v. *Meigs,* 50 N. Y., 480.) Under the facts presented, we think that there was no such want of diligence on the part of the party defrauded as entitled the defendants to the benefit of the market-value of the stock when sold, and the referee was wrong in allowing the same. Nor is there any ground for claiming that John J. Lever occupies the position of an innocent purchaser for value of the bond and mortgage, and that the right to rescind could not exist as to him. He paid no money, parted with no property and took the assignment without any pecuniary consideration and ostensibly as a gift. These facts do not impart a good title to him as a *bona fide* purchaser of a bond and mortgage given to secure the price of property upon a sale adjudged to be fraudulent. Even if such a defence might exist as to the whole cause of action it should not prevail here, where the plaintiff's judgment is not assailed.

It is not necessary in view of the discussion already had, to consider the defense of usury, and as the General Term were right in modifying the judgment of the court below, it must be affirmed, with costs.

All concur.

Judgment affirmed.