CHARLES C. MESTER, Appellant, v. BRECKIN-RIDGE JONES et al.

Division One, December 30, 1920.

1. **FRAUD: Discovery: Limitations: Means of Discovery.** The presumption is that if a party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it. Where the party defrauded had the means at hand to readily discover the fraud, and such means of information would have been used by a person of ordinary care in the transaction of his own

business, he will be held, as a matter of law, to have had due notice of everything which a proper use of such means' would have disclosed, and cannot escape the saving clause of the Statute of Limitations which requires an action for relief grounded on fraud to be brought within five years, "the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

2. ———: ———: ———: Purchase of Bonds: Concealment: Original Misrepresentations. No force sufficient to prevent the running of the Statute of Limitations relating to the discovery of frauds can be allowed to misrepresentations concerning the assets and properties and possible profits of a corporation made by its promoters to a purchaser of its bonds, unless they were of a character designed and effective to operate after the fraud was perpetrated, so as to conceal the cause of action and prevent discovery; and the concealment must be some affirmative act or representation, designed to prevent, and which does prevent, discovery of the cause of action.

3. ———: ———: ———: ———: Concealment: Examination of Books. To prevent the bar of the Statute of Limitations on the ground that the facts constituting the fraud were not discovered within the five-year period, the circumstances of the discovery must be fully stated, and the delay must be shown to be consistent with requisite diligence. Where the purchaser of bonds was misled by false statements of the promoters of a corporation to the effect that it was the owner of a city franchise under which it was about to install 225,000 telephones and ultimately 750,000, that $17,000,000 of bonds were to be issued pursuant to contracts which would yield $5,000,000 for the company's use, that sales of stock had been made or contracted to the amount of $41,303,000, and that there was this amount from this source as security for the bonds, allegations that said purchaser was not a stockholder and had no right to inspect the books of the company and that the books were so kept and manipulated that he could not have discovered the fraud even if he had had the right to inspect them, are not statements of facts which amount to concealment or of requisite diligence, for some of those things are not required to be shown by the company's books.

4. ———: ———: ———: ———: City Franchise. Allegations that the promoters of a corporation, before plaintiff bought its bonds, had represented that it had a city franchise under which it was about to install 225,000 telephones and ultimately 750,000, whereas in fact it had bought an old burglar-alarm system franchise, reveal a source of information which no condition of the company's books could conceal, for the existence or non-existence of the franchise, and whether or not construction on a large scale had

been begun before he bought its bonds, were things which almost casual inquiry would have discovered, and did not toll the Statute of Limitations.

5. ———: ———: ———: Failure of Corporation: Report of Receiver. Mere failure of a corporation organized to acquire a city franchise and to construct and operate a large telephone system is not sufficient to put a purchaser of its bonds on notice that its representations that it had acquired such a franchise and that it had immense assets to construct and operate the system were false; but when the company defaults in the payment of interest on the bonds and the mortgage securing them is foreclosed, a report of the referee showing a payment of only one and a half cents on the dollar of the secured indebtedness will reveal the fraud, if there was such, and if by an examination of that report he could have uncovered immediately the worthless character of the franchise, the value of the corporation's assets and the whole transaction, he must be held to have had knowledge of those things, and his failure to make the examination or to allege any reasonable excuse for not making it will not extend the five-year period for suing for fraudulent misrepresentation.

Appeal from St. Louis City Circuit Court.—*Hon. Vital W. Garesche*, Judge.

AFFIRMED.

*Goodbar & Tittman* for appellant.

(1). Section 1889, R. S. 1909, designates, among other actions, that "an action for relief on the ground of fraud" is barred in five years. The 5th subdivision reads: "fifth, an action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued, until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud." The petition, from all the circumstances stated, alleges facts sufficient to bring the plaintiff within the ten year exception to Section 1889. (a) The law does not require of one that he should suspect fraud. On the contrary, all transactions are presumptively honest. College v. Dockery, 241 Mo. 551,

553; Judd v. Walker, 215 Mo. 331; Snider v. McAtee, 165 Mo. App. 270; Kelley v. Peeples, 192 Mo. App. 439. (b) It is not necessary for a party to plead that he used due diligence to discover fraud, because if he had no reason to suspect fraud, he was not called upon to investigate. Judd v. Walker, 215 Mo. 332; Robertson v. Smith, 204 S. W. 413; College v. Dockery, 241 Mo. 553; Higgins v. Crouse, 147 N. Y. 411; Baker v. Lever, 67 N. Y. 308, 309. (c) Mere want of diligence without knowledge of the fraud is not sufficient to deprive a party of his legal right to rescind a fraudulent contract. Baker v. Lever, 67 N. Y. 309. (d) The law requires only that one shall exercise the care employed by an ordinarily prudent business man, and in no sense imposes the duty to exercise extraordinary diligence in investigating whether or not he has been defrauded. Snider v. McAtee, 165 Mo. App. 270; Kelley v. Peeples, 192 Mo. App. 439; Brown v. Railroad, 187 Mo. App. 111; Baker v. Lever, 67 N. Y. 308, 309. (e) The known fact of a failure of an enterprise and a subsequent foreclosure is not sufficient to raise a presumption of fraud and so put a party upon notice. Higgins v. Crouse, 147 N. Y. 411. (f) "A man to whom a particular distinct representation has been made is entitled to rely on the representation and need not make any further inquiry, although there are circumstances in the case from which an inference inconsistent with the representations might be drawn." Judd v. Walker, 215 Mo. 330-332, quoting Kerr on Fraud (2 Ed.), 40, 41, and Bigelow on Frauds, 523-525; Stonemets v. Head, 248 Mo. 262; Kottrill v. Krum, 100 Mo. 404; McGhee v. Bell, 170 Mo. 135; Leicher v. Kenney, 98 Mo. App. 405; Snider v. McAtee, 165 Mo. App. 270. (g) Only in those cases where a party owed a duty to investigate and did not, or where he had knowledge of facts sufficient to imply fraud will the law charge him with knowledge of the fraud, and in such cases, only, is it necessary to allege due diligence to bring one within the exception to the statute. Such is not

the state of facts in the case at bar. Shelby County v. Bragg, 135 Mo. 291; State ex rel. v. Yates, 231 Mo. 276; Callan v. Callan, 175 Mo. 346. (2) Fraud is a subject of original equity jurisdiction and, in matters of fraud law and equity have concurrent jurisdiction and if the right asserted is a subject of original equity jurisdiction, the court will entertain it even though there may be a remedy at law. Nelson v. Betts, 21 Mo. App. 231; Steward v. Caldwell, 54 Mo. 539; Baldwin v. Davidson, 139 Mo. 126; Lime & Cement Co. v. Bank, 158 Mo. 279; Van Raalte v. Epstein, 202 Mo. 195; Hanson v. Neal, 215 Mo. 284. "In cases of fraud and deceit the plaintiff has two remedies: he can stand upon his contract and sue for the damages growing out of the fraud and deceit practiced upon him in the procurement of the contract, or he can elect to rescind the contract and sue to have the same canceled and for naught held." Ryan v. Miller, 236 Mo. 508; Brown v. Lead & Zinc Mining Co., 231 Mo. 172, 175; Hart v. Handlin, 43 Mo. 175; Gould v. Cayuga Nat. Bank, 86 N. Y. 83; Bosley v. N. M. Co. et al, 123 N. Y. 555; Vail v. Reynolds, 118 N. Y. 302. Therefore, this action, based upon fraud, for a rescission of a sale of certain bonds and the restoration to plaintiff of the consideration paid for said bonds was properly brought in equity. (3) In rescission the plaintiff need only make such a restoration as is reasonably possible under the circumstances. Sandage v. Studebaker Co., 142 Ind. 154; Sales, 35 Cyc. p. 146; Benjamin on Sales (5 Ed.), pp. 442-3-4; Gould v. Cayuga Bank, 86 N. Y. 81; Doan v. Lockwood, 115 Ill. 496; McMichael v. Kilmer, 76 N. Y. 46. And when the subject-matter has become worthless he need make no tender. "The law, does not require an idle ceremony." Fitz v. Bynum, 55 Cal. 461; Baker v. Lever, 67 N. Y. 308; Gould v. Cayuga Bank, 86 N. Y. 81. In the case at bar plaintiff tenders back exactly what he received—a worthless piece of paper.

Mester v. Jones.

*Jourdan, Rassieur & Pierce* for respondents.

(1) The petition shows on its face that the cause of action which accrued in 1905, when the bonds were purchased, was barred by the Statute of Limitations of this State requiring suits of this character to be brought within five years. Sec. 1889, R. S. 1909; Shelby County v. Bragg, 135 Mo. 300; Wood v. Carpenter, 101 U. S. 141; Heisler v. Clymer, 179 Mo. App. 120; Callan v. Callan, 175 Mo. 361; State ex rel. v. Yates, 231 Mo. 276; Johnson v. United Railways, 243 Mo. 278; Higgins v. Crouse, 147 N. Y. 411; Seymour v. Seymour, 28 App. Div. (N. Y.) 495; 29 Cyc. 1114-15; St. Joseph v. Wyatt, 274 Mo. 575; Putnam County v. Johnson, 259 Mo. 73; College v. Dockery, 241 Mo. 553. (2) A suit in equity does not lie on behalf of a purchaser to set aside for fraud an executed sale of a chattel where an adequate remedy at law may be had. Levering v. Schnell, 78 Mo. 170; Stalter v. Stalter, 151 Mo. App. 66; Pocoke v. Peterson, 256 Mo. 518; Williston on Sales, sec. 647; Newham v. May, 13 Price, 749; Bosley v. N. M. Co., 123 N. Y. 550. (3) Appellant cannot maintain an action for equitable rescission, because the right to rescind a contract for fraud must be exercised promptly upon discovery; otherwise the party complaining will be deemed to have affirmed the contract and to have elected to stand on his right to sue for damages. Hallahan v. Webber, 7 App. Div. (N. Y.) 122; Shiffer v. Dietz, 83 N. Y. 300; Pryor v. Foster, 30 N. Y. 171; Cobb v. Hatfield, 46 N. Y. 533; Mayo v. Knowlton, 134 N. Y. 250; Bruce v. Davenport, 1 Abb. Ct. App. Dec. 233, 5 Abb. Prac. (N. S.) 185; Zimmele v. American Plaster Co., 1 App. Div. (N. Y.) 327; Trott v. Schmitt, 119 App. Div. (N. Y.) 474; Gamble v. Tripp, 99 Cal. 223; Patent Title Co. v. Stratton, 89 Fed. 174; Houston v. Cook, 153 Pa. St. 43. (4) The petition shows on its face that the bonds sought to be tendered back are no longer in existence, but were extinguished by foreclosure pro-

ceedings and merged in a general deficiency judgment in-favor of all the outstanding bondholders as creditors. Cowgill v. Robberson, 75 Mo. App. 419; Wayman v. Cochrane, 35 Ill. 151.

BLAIR, P. J.—This is an appeal from a judgment entered after a demurrer had been sustained to the petition and appellant had refused to plead further. The petition seeks rescission of a contract of purchase of eleven bonds of the United States Independent Telephone Company into which it is alleged appellant was induced to enter by false representations of persons alleged to have been acting as agents and representatives of respondents and others who are designated as "The Pro-moters." The petition is long. In order that the questions presented may be understood it will be necessary to incorporate a summary of its allegations.

It is alleged that the United States Independent Telephone Company (hereinafter referred to as the Independent Company) was a New Jersey corporation, which, in September, 1905, increased its capital stock to $50,000,000, divided into shares of $100 each; that, October 2, 1905, it authorized the issuance of $25,000,000 five-per-cent, collateral trust gold bonds to mature in twenty years, $17,000,000 of which were authorized to be issued immediately; that respondents and others named were the promoters and organizers of the Independent Company; that Thos. W. Finucane was its president and Albert O. Ferris was the paid agent of the promoters to solicit and receive subcriptions for the bonds; that Ferner was vice-president and cashier of the Alliance Bank of Rochester, and others of the promoters were directors thereof; that the bank was employed as the agent for the issuance of bonds, receipt of moneys therefor and in other ways, and that all the promoters were known to plaintiff as men of high financial standing, and that their connection with the matter induced full credence in the representations made; that a prospectus was issued wherein it was falsely represented

that $17,000,000 of bonds had been sold or underwritten, and that the Independent Company would have $5,000,-000 in its treasury for corporate uses as a result thereof; that the Independent Company had acquired from the City of New York a valid franchise for the construction and operation of an independent telephone plant in that city; that the Independent Company had acquired the stock of a telephone manufacturing company, and it was falsely represented that this company was in prosperous condition and had been paying large dividends; that the report of accountants respecting the manufacturing company's condition was suppressed or misrepresented; that it was falsely represented that $41,-303,000 of the stock of the Independent Company had been issued, and that $17,000,000 of the Independent Company's bonds had been sold on a cash or property basis; that $8,000,000 of the Independent Company's bonds were to be held in escrow to acquire other properties; that important facts were concealed; that these representations were misleading and false and made to deceive appellant and did mislead and deceive him and induce him to purchase, on December 13, 1905, eleven of the $1,000 bonds of the Independent Company; that he paid $11,000 therefor and received eleven bonds and a voting trust certificate for $4400 representing stock in the Independent Company of the par value of $4400.

It is further alleged that before the mortgage to secure the $25,000,000 in bonds was executed it was known to respondents that only $3,000,000 of the bonds had been sold and only $2,500,000 realized therefrom, and known to the respondents that the enterprise could not succeed because of failure to secure sufficient working capital, but that this was concealed from appellant, and his money was accepted in payment for the bonds for which he had subscribed; that the standing and reputation of respondents and their counsel induced confidence and belief in all the representations made.

Plaintiff also alleges that he never was a stockholder in the Independent Company, and had no right to inspect its books, and that the books were so kept that he would not have discovered the fraud even had he examined the books.

"Plaintiff states that in 1913, through letters and conversations with other persons, he first suspected that he had been deceived and defrauded by the misrepresentations of said promoters as herein set out;" that because of the magnitude and complexity of the matters involved and because the Independent Company had been dissolved and its officers and directors were widely scattered, plaintiff had great difficulty in discovering the facts and the truth; that as soon as he "had become convinced" that he had been defrauded, plaintiff "employed counsel to negotiate a settlement of his claim; that before and ever since the discovery of the fraud, the bonds and voting trust certificate have been worthless, but plaintiff has been ready and willing, and is now so, and now offers to deliver back the bonds and voting trust certificate, together with installments of interest received, together with other payments received and interest thereon. That appellant received semi-annual interest payments of $275 each on April 1, 1906, and October 1, 1906, and "thereafter and on or about the 11th day of March, 1908, there was paid on each of the bonds so issued by Henry W. Conklin, Referee, the sum of $15.16 as a pro rata share of the net proceeds of a sale under the foreclosure of an indenture or mortgage which secured, or purported to secure, the said bonds; and, thereafter, on April 24, 1916, plaintiff accepted the sum of $1375 from the estate of Busch as consideration for a covenant not to sue on his claim against that estate.

The petition further alleges that "by reason of the premises the plaintiff desires an equitable rescission of the aforesaid contract between plaintiff and the promoters of the syndicate because of the fraud and deceit practiced by them on this plaintiff, and an account-

ing with respect to all moneys received by them or any of them from this plaintiff, and the payment to plaintiff of any amount found due plaintiff upon such accounting, and plaintiff brings this action because plaintiff has no remedy at law.''

(1)    That the court decree that the subscription for and sale of the bonds and certificate to plaintiff be rescinded and respondents be required to take them back and ''restore to plaintiff the consideration'' paid by plaintiff therefor.

(2)    That respondents be required to account to plaintiff for the moneys received from him, less the interest payments received by him April 1 and October 1, 1906, and the payment made plaintiff by the referee in the foreclosure proceedings in March, 1908, and less, also, the sum received from the Busch estate; and

(3)    For such other and further relief as seems just.

Some further details of allegations above epitomized appear in the opinion.

The grounds of demurrer were:

(1)    That the petition did not state facts sufficient to constitute a cause of action; (2) that the petition shows on its face that the alleged cause of action is barred by the five-years Statute of Limitation; (3) because an action in equity does not lie to set aside for fraud an executed sale of a chattel where an adequate remedy at law exists; (4) because the petition does not properly and affirmatively show that this action was commenced promptly after discovery of the alleged fraud, and the right to rescind the contract for fraud must be executed promptly upon the discovery of fraud, otherwise the party complaining of the fraud will be deemed to have affirmed the contract and to have elected to stand on his right to sue for damages; (5) because the petition shows a settlement with a joint tortfeasor and, therefore, a release of all; (6) because the petition shows the bonds sought to be tendered back are no longer in existence, but had been extinguished by

286 Mo.—5

foreclosure proceedings and merged in a deficiency judg-
ment in favor of all bond-holders and creditors.

The demurrer was sustained, the judgment was en-
tered, and this appeal follows.

Appellant contends (1) the facts stated show the
case falls within the exception to the fifth clause of the
five-year section of the Statute of Limitations (Sec.
1889, R. S. 1909); (2) the suit is properly brought in
equity; (3) laches does not inhere in the facts stated;
(4) the covenant not to sue the Busch estate does not
bar this suit; and (5) that there has been no failure to
tender which bars the suit.

In his brief appellent confines himself solely to an
effort to show that the allegations of the petition make
it good as against the several grounds of respondents'
demurrer.

Appellant's first endeavor is to show that the allega-
tions of the petition are sufficient, as made, to bring
the case within the exception to the fifth clause of Sec-
tion 1889, Revised Statutes 1909. The applicable part
of this section, which prescribes the time within which
certain actions shall be brought, reads: "Within five
years:  .   .   .    fifth, an action for relief on the ground
of fraud, the cause of action in such case to be deemed
not to have accrued until the discovery by the aggrieved
party, at any time within ten years, of the facts con-
stituting the fraud."

Appellant does not contend that the exception to
the statute becomes applicable merely because he did
not discover the fraud or all the facts constituting it,
but concedes that "he who has at his disposal the
means of knowledge, is held to know" and "that where
there is a duty to use diligence, those facts which dili-
gence will discover are presumed to be known under the
law of notice," as stated in cases he cites. He does not
deny that his cause of action accrued if, at any time,
"by proper diligence" as an ordinarily prudent man,
he, under the circumstances, should have discovered"
the fraud (State ex rel. v. Yates, 231 Mo. l. c. 290);

nor that if he had the means of knowledge he must be held, in this case, to have had the knowledge itself.

"The presumption is, that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it; and the plea of the statute is not answered by the fact, that the action is founded on a simple breach of trust, or upon what is but a bare violation of an engagement, for allegations upon such grounds might be made in all cases." [Angell on Limitations (6 Ed.), sec. 187.] Under a statute analogous to ours it was held that, within its meaning, knowledge of facts constituting the fraud would be imputed in case the circumstances were such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, and he omits to make inquiry which would have developed the truth. [Higgins v. Crouse, 147 N. Y. 411; 2 Wood on Limitations (4 Ed.), sec. 276b (11).] In the following section (276b (12) ) it is said: "Where a party defrauded had the means at hand to readily discover the fraud, and such means of information would have been used by a person of ordinary care in the transaction of his own business, he will be held, as a matter of law, to have had due notice of everything which a proper use of such means would have disclosed."

To support his argument that the allegations in the petition are sufficient to bring the case within the exception in the fifth clause of Section 1889, appellant calls attention to the allegations (1) that he was never a stockholder and had no right to inspect the books of the corporation mentioned in the petition; (2) that the books and records of these corporations were so "kept and manipulated" by respondents and their associates that appellant "could not by the exercise of due diligence discover the fraudulent acts" pleaded, or the condition of the company, or that "said condition was . . . due to the fraudulent acts or misrepresentations of said promoters rather than to general busi-

ness depression;'' (3) that appellant relied upon the misrepresentations because of the high standing, known to him, of those making them; and (4) the allegation concerning the information received by him in 1913 and his actions pursuant thereto.

It is argued, first, that by reason of the misrepresentations whereby the purchase of the bonds is alleged to have been induced, appellant was excused from making any subsequent inquiry. In support of this certain cases are cited (Judd v. Walker, 215 Mo. 331; Kelley v. Peeples, 192 Mo. App. 435; Snider v. McAtee, 165 Mo. App. 260; Robertson v. Smith, 204 S. W. 413; Baker v. Lever, 67 N. Y. 304) in which it was held, in effect, that when one has acted to his hurt upon the faith of misrepresentations of fact and sues for damages, it ordinarily does not lie in a defendant's mouth to say the plaintiff was too gullible and should not have believed what defendant told him. No question of the Statute of Limitations was in those cases. They have little to do with the question here. In College v. Dockery, 241 Mo. l. c. 551, et seq., are expressions which might seem to support appellant's present contention if it did not appear from a reading of the whole decision that the question of pleading, concerning which the remarks mentioned were made, was not in the case and, also, that a fiduciary relation existed between the plaintiff and Hilbert, upon whose fraud the suit was founded. [State ex rel. v. Yates, supra, l. c. 291 and cases cited.] The rule above quoted from Angell would seem to deny any force to the original misrepresentations unless they were of a character designed and effective to operate after the fraud was perpetrated so as to conceal the cause of action and prevent discovery. [Caldwell v. Ulsh, 103 N. E. 879.] This case is cited in a note to Section 276f (2) in Wood on Limitations. In that section it is pointed out that the concealment must be ''some affirmative act or representation, designed to prevent, and which does prevent, the discovery of the cause of action. Concealment of a cause of action must consist of some trick or

artifice preventing inquiry, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence, and mere silence is insufficient. There must be something actually said or done which is directly intended to prevent discovery.'' This doctrine has been approved by this court in previous decisions. [Callan v. Callan, 175 Mo. l. c. 361; State ex rel. v. Yates, supra, l. c. 291.; Johnson v. United Rys., 243 Mo. l. c. 299.] Tested by these principles the allegations of misrepresentations inducing appellant to purchase the bonds involved have no efficacy to bring his case within the provision upon which he relies.

Other allegations are that appellant was not a stockholder and had no right to inspect the books of the Independent Company, and that the books were so ''kept and manipulated'' that he could not have discovered the fraud even if he had had a right to inspect them. It is not deemed necessary to go into the question whether these allegations are pleaded with sufficient particularity to justify appellant ascribing to them the weight he does, nor into the further question whether they furnish a sufficient excuse for not requesting the privilege of examination, and alleging here a denial, if any, or setting out the actual facts constituting the ''manipulations'' of the books, if the privilege of examination had been granted. Let it be assumed, for the purpose of this case, that these allegations are a sufficient answer to any effort to charge appellant with knowledge, in the first instance, of what the books of the Independent Company showed.

The petition also shows that appellant's suspicions were aroused in 1913 ''by letters and conversations with other persons'' but it does not allege the sources or the particulars of the discovery, nor why the knowledge then received from sources other than the books of the Independent Company had not been acquired before. In the Yates case, already cited, is approved a holding that ''the circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be

shown to be consistent with the requisite diligence.'' Equity searches the pleader's conscience with respect to his discovery. There is no allegation that there was any act of concealment of respondents which was designed to or did prevent an earlier discovery from the source from which it came in 1913.

Appellant alleges some of the chief representations were that the Independent Company had acquired a franchise from the City of New York under which it was on the point of installing a plant with a capacity of 225,000 telephones and an ultimate capacity of 750,000 telephones; that $17,000,000 of bonds were to be issued pursuant to contracts such that it would yield a fund of $5,000,000 for the company's use in addition to property acquired therefor which would furnish part of the security for the mortgage; that sales of Independent Company stock, for money or property, had been made or contracted to an aggregate of $41,303,000; that there was this amount from this source as security for the bonds.

If, in fact, as alleged, no such franchise had ever been purchased or had ever existed but a franchise covering but a limited district and formerly used as alleged by a burglar alarm company with a capital stock of $5,000 had been indirectly acquired; that this franchise was transferred to the Independent Company for stocks and bonds of the value of $39,000,000; that appellant understood this was a general franchise acquired from New York City and of great value, as he alleges, while in fact it was merely an old burglar alarm system franchise and not valid for telephone purposes; and if he understood that the Independent Company was immediately to begin to construct under this franchise a telephone system on a large scale, and that the franchise was of ''large value to it and a valuable security for the bonds offered;'' and if no construction could be done under the franchise without a permit from the City of New York and no such permit had been obtained—all of which is alleged—then it seems clear there was a source

of information which no condition of the books of the Independent Company could conceal and which it is not alleged respondents did any act or thing tending to conceal. The existence of the franchise under which the company was to construct and operate its plant or the non-existence of it was a thing almost casual inquiry would have discovered; likewise with respect to the permit from the city necessary to make the franchise available, and likewise the fact whether or not the large construction had been begun at all on a scale as represented. They were vital facts and were open to discovery by appellant at any time. Further, though the company defaulted the interest April 1, 1907, and when foreclosure was had under the mortgage securing the bonds, resulting in the payment by the referee of one and one-half cents on the dollar on the secured indebtedness, and an amount equal to about six-tenths of one cent on the dollar on the amount appellant alleges he was deceived into believing was at the disposal of the company in the fall of 1905, appellant does not include in his petition any explanation of his failure to examine the referee's report and discover how far, and why, the property sold fell short of the value he says the property of the company was represented to have had when he bought his bonds. He insists the mere failure of the venture was not sufficient to put him on notice and cites the case of Higgins v. Crouse, 147 N. Y. 411. The principle of that case is inapplicable to this. It does not question the general rule, but proceeds under it. In that case it appeared Higgins had bought oil stock. In was represented to him that an oil company had bought a farm and was putting down wells with every prospect of success. In fact the land had already been prospected and found barren, and the rigs were being moved off at the time. The court points out that what plaintiff thought he bought was a "chance of large profit" while, in fact, he was merely saddled with a loss already certain; that in the nature of the transaction plaintiff must have anticipated failure and complete loss if oil was not

found. In that case the venture was highly and merely speculative, and a total failure meant to Higgins only that oil had not been found, a contingency which he had in view when he bought. In this case the venture is not a speculation on the presence of a substance hidden in the earth, but, if plaintiff believed what he says he believed, the problem concerned the practical disappearance in a comparatively few months of tens of millons of dollars worth of tangible and intangible property and money, securing a mortgage. We think plaintiff's authorities do not justify his inaction after his admitted discovery of the utter worthlessness of the security upon which he says he invested his money. He should have made inquiry. That would have led him to the referee's report for the property sold and to the existence of the franchise and permit and the great plant which he alleges it was represented to him was straightway to be constructed under that franchise. He could have uncovered immediately the whole transaction. No reason for a failure to do these things appears in the petition.

We have, as we must on demurrer, taken as facts all allegations of fact, without regard to their actual truth, and have considered the case on the theory on which it has been presented and, doubtless, was presented in the trial court.

There are also other grounds of demurrer, some of which have been upheld in a like case involving the same transaction, in an unreported decision of the Supreme Court of New York, which is before us, and which was affirmed by the Court of Appeals. These questions it is unnecessary to decide in view of the conclusion already reached. The judgment is affirmed. All concur.