JOHN H. HIFLER and Others, Respondents, *v.* CALMAC OIL AND
GAS CORPORATION and Others, Defendants, Impleaded with
JOHN W. BECKER, Appellant.

Fourth Department, November 10, 1939.

*John W. Becker*, for the appellant.

*Henry P. Nevins* and *E. Allen Mapes* [*Joseph A. Nevins* of counsel], for the respondents.

Order affirmed, with ten dollars costs and disbursements, on the opinion of VAN VOORHIS, J., at Special Term.

All concur. Present — CROSBY, LEWIS, CUNNINGHAM, TAYLOR and DOWLING, JJ.

The following is the opinion of VAN VOORHIS, J., rendered at Special Term:

VAN VOORHIS, J. The action is brought to impress a trust upon certain oil and gas leases in the hands of various defendants in favor of Calmac Oil and Gas Corporation, of which plaintiffs are stockholders.

A motion to dismiss a former complaint was made by defendant New Penn Development Corporation, which was granted with leave to the plaintiffs to serve a second amended complaint; that appears to have been served upon and accepted by all of the defendants, and is the pleading to which each of the present motions is addressed. In so far as concerns the defendants Godfrey L. Cabot, Inc., Richard M. Atwater, III, and the First National Bank of Port Allegany, paragraphs 28, 30 and 37 of the second amended complaint have been amended by stipulation.

The pleading now under consideration as modified by that stipulation (which is hereinafter referred to as the complaint) alleges in substance that Calmac Oil and Gas Corporation is a Pennsylvania corporation; that it was organized at the instance and request of one Frank W. Calkins, now deceased, who resided at Bradford, Pa.; that the plaintiffs are all residents of Pennsylvania with the exception of John W. Hifler, who is a resident of Erie county, N. Y.; that at the time of the death of Frank W. Calkins on September 28, 1935, there stood in his name upon the records in the office of the county clerk of Steuben county, New York, a number of oil and gas leases upon real property situated in the towns of Woodhull and Troupsburg; and that before Calkins died and at or before the times when he sold to the plaintiffs their shares of stock in Calmac Oil and Gas Corporation he made various statements in regard to these leases as an inducement to them to purchase their shares. It is alleged that he told the plaintiff John H. Hifler, between December 5, 1930, and March 6, 1931, that he had the said leases and was willing to assign them to a corporation to be formed if sufficient money could be obtained to drill a gas well deep enough to penetrate the Oriskany sand, and, if Hifler would put in sufficient money to drill such a well, that Calkins would assign the leases to the corporation. It is further alleged that Hifler paid certain money to Calkins in reliance upon these representations and received certain shares of stock in the corporation, although nothing is stated about whether enough money was raised to drill a well into the Oriskany sand or whether such a well was driven by Calmac Oil and Gas Corporation. As to the plaintiff Estelle E. Williamson it is alleged that Calkins stated that Francis M. Nash, an attorney of Bradford, Pa., had said leases in his possession for the purpose of assigning them to a corporation, and that they would be assigned to it upon organization, and that Estelle E. Williamson, believing

the said representations, made her stock investment in this corporation. In her case it is alleged that these representations were confirmed in writing by Calkins and Nash. In the case of the plaintiffs John Franks and Gladys Franks, it is alleged that Calkins stated that a corporation known as Calmac Oil and Gas Corporation had been organized, and that the leases had been assigned to it, and that it was then the owner and holder thereof, on the basis of which they made their investment. Substantially the same allegation is made concerning the plaintiffs George A. Zillafro and Blanche E. Zillafro. No times are stated when these representations were made except in the case of plaintiff Hifler.

The complaint further alleges in effect that the plaintiffs are, in so far as they know, the holders of all the outstanding shares of stock of Calmac Oil and Gas Corporation; that its directors consist of three persons who were the original directors and have held over since the first year; that they have performed no act as directors of any kind, nature or description since the organization of the corporation, know nothing about its affairs and have in their possession none of the books or records of the corporation, and that it would be futile to request them to bring the present action on behalf of the corporation as they would be incapable or incompetent to prosecute any such action.

It is further alleged that Calkins' administrators were appointed by the Orphans Court of McKean county, Pa., and sold and transferred the leases in question to the defendant John W. Becker on December 14, 1935, believing that they were the property of the estate of Frank W. Calkins.

It is then alleged that Becker retained some of these leases himself, that he transferred others to the defendant Godfrey L. Cabot, Inc., and the rest to the defendant Richard M. Atwater, III, which he in turn transferred to Southwestern Development Company, Inc., which is predecessor in interest of the defendant New Penn Development Corporation. Under the terms of the sale from Richard M. Atwater, III to Southwestern Development Company, Inc., there was reserved to Atwater a royalty upon gas procured from any wells drilled by Southwestern Development Company, Inc., its successors or assigns, a portion of which reserved royalty Atwater assigned to the defendants Orlo J. Hamlin and Robert A. Diegel outright, and the balance to defendant First National Bank of Port Allegany, Pa., as collateral security for a loan No assignments of leases from Frank W. Calkins or Francis M. Nash to Calmac Oil and Gas Corporation were recorded, but the assignment by Calkins' administrators to Becker and all of the subsequent assignments were recorded.

The motions to dismiss the complaint which are made by defendants other than Becker are based upon the recording act under whose protection they claim to have been brought by the allegations of the complaint. Becker's motion is based upon more fundamental issues concerning the nature of the action.

Addressing attention first to Becker's motion, it may be observed that the complaint is governed by the law of Pennsylvania which is presumed to be the same as the common law of New York. The cause of action arose, if anywhere, in Pennsylvania. That means that the law of Pennsylvania is controlling, but the established rule is that in an action in this State the law of another State is a fact and must be pleaded before it can be considered. It remains a question of fact, notwithstanding that in the determination thereof neither the trial court nor any appellate court is limited to the evidence produced on the trial, but may consult the written authorities. (Civ. Prac. Act, § 391.) Where, as here, the pleading contains no allegation of the law of a sister State, the common law is presumed to be the same as the common law of New York, provided that the State is one whose jurisprudence is founded upon the common law. (*Southworth* v. *Morgan*, 205 N. Y. 293, 296; *Watkins* v. *Commercial Stevedoring Co., Inc.*, 216 App. Div. 234.) Although no presumption arises that an analogy exists between statute law in the two jurisdictions, certain New York statutes, such as the Statute of Frauds, may be considered in so far as they limit the operation in New York of the common law. That is upon the theory that, although the common law alone is controlling, it is controlling only in so far as it is still in effect, and that it is not in effect where it has been limited or repealed by statute. There is incongruity in speaking of an equitable action, such as this, being governed by the common law, but in this connection the term includes also those principles which have their origin in the decisions of the Court of Chancery and are not founded upon statute.

The next inquiry concerns the nature of the cause of action which plaintiffs claim to possess. The complaint indicates that it is a derivative action on behalf of Calmac Oil and Gas Corporation. That refers to the enforcement of a right which resides not in the plaintiffs individually but in the corporation of which they are stockholders. The relief demanded is that Frank W. Calkins be declared to have been a trustee of these leases for the benefit of Calmac Oil and Gas Corporation, that the other defendants be held to have acquired them subject to that trust, which the complaint demands now be enforced by an adjudication that Calmac Oil and Gas Corporation is the owner of the leases and that no

other defendant has any interest therein. What are the facts stated in the complaint indicating that Calmac Oil and Gas Corporation acquired an equitable right to the leases because of which plaintiffs seek to impress a trust in its favor? It may be noted at this point that no executory contract is alleged pursuant to which Calkins became obligated to transfer these leases to Calmac Oil and Gas Corporation. The underlying basis upon which recovery is sought is tort rather than contract, that is to say, the attempt is made to hold Calkins and his successors and assigns as trustees *ex maleficio* on account of misrepresentations. No contract between Calkins and Calmac Oil and Gas Corporation can be spelled out of his statements to the Franks and Zillafros that the leases had already been transferred to the corporation, or to Williamson that they had been delivered to Frank M. Nash for that purpose. Even the earlier statements to Hifler that Calkins would assign the leases to a corporation to be formed if sufficient money should be obtained to drill a well into the Oriskany sand do not amount to a contract for the benefit of the corporation as a third person. (*Rector, etc., v. Teed*, 120 N. Y. 583; *Seaver v. Ransom*, 224 id. 233; *Lawrence v. Fox*, 20 id. 268.) One reason is that there is no allegation that enough money was raised to enable Calmac Oil and Gas Corporation to drill a well into the Oriskany sand. That was the condition stated upon which any promise by Calkins to Hifler depended. But regardless of that point, it is clear that for Hifler, as well as for the other plaintiffs, the complaint is grounded upon *representations* by Calkins rather than on any contractual obligation on his part to assign the leases to the corporation. This is illustrated by the allegation that Calkins told Hifler that Calkins was to have a one-fourth interest in the corporation when it became organized. That was evidently to be the consideration for the assignment of the leases by Calkins. Naturally, Hifler and Calkins, even if the complaint had alleged that they attempted to do so, could make no contract between themselves that would be binding upon the corporation to issue one-fourth of its stock for assignments of these leases or upon any terms whatever. On the other hand, the complaint means that Calkins represented to Hifler that it had been arranged in advance between himself and those who would control the corporation after it became organized, that he would assign the leases for a one-quarter stock interest, provided that the corporation realized enough money from the sale of the remaining stock to others to drill a well into the Oriskany sand. Whatever rights this corporation may have are based not upon any executory agreement for its benefit under the doctrine of *Lawrence v. Fox*, but instead upon a constructive trust arising

by reason of Calkins' representations to the plaintiffs that the leases had become or would become its property coupled with the existence of a fiduciary relationship between Calkins and the plaintiffs that was abused by the transfer of the leases to others. If a constructive trust came into existence, it ran for the benefit of Calmac Oil and Gas Corporation which became entitled to sue under it. (*Amherst College* v. *Ritch*, 151 N. Y. 282.) On that theory it is immaterial whether the condition in the representations to Hifler was fulfilled, inasmuch as the representations to each inure to the benefit of all through the corporation.

Did a constructive trust come into existence? Neither the Statute of Frauds nor Real Property Law, sections 94 or 96, forbids such a result if a confidential relation would be abused by the repudiation without redress of a trust orally declared. (*Foreman* v. *Foreman*, 251 N. Y. 237, 240; *Gallagher* v. *Gallagher*, 135 App. Div. 457.) The existence of a confidential relation between Calkins and the plaintiffs is a *sine qua non*. In order to avoid the Statute of Frauds it must be " the case of a confidence induced, not by the bare promise of another, but by the promise and the confidential relation conjoined." (*Wood* v. *Rabe*, 96 N. Y. 414, 426.) It must appear that " the absence of a formal writing grew out of that very confidence and trust, and was occasioned by it." (*Goldsmith* v. *Goldsmith*, 145 N. Y. 313, 318.) The foregoing quotations are set forth in *Sinclair* v. *Purdy* (235 N. Y. 245, 253), where the court added: " It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion." A relationship of trust and confidence has long been recognized to exist between promoters of a corporation and persons whom they induce to join the enterprise by subscribing for stock. (*Brewster* v. *Hatch*, 122 N. Y. 349; *Getty* v. *Devlin*, 70 id. 504; 54 id. 403; 14 C. J. § 327; 1 Fletcher Cyc. Corporations, § 192.) Did Calkins become a promoter of Calmac Oil and Gas Corporation? The question is not free from doubt so far as the complaint discloses. " No doubt a very little will make people promoters of a company, if it can be seen that they were really doing something in the way of speculation for their own interest, and not acting merely as agents for others." (*Lydney and Wigpool Iron Ore Co.* v. *Bird*, 31 Ch. D. 328, 339.) The complaint shows that Calkins assembled the oil and gas leases (¶ 16), that Calmac Oil and Gas Corporation was organized at his instance and request, possessing dummy directors subservient to his attorney (¶¶ 10, 11), and that he was instrumental in selling stock to the various plaintiffs (¶¶ 16–19). Those are all of the facts which are set

forth concerning his relationship to the enterprise. The statement that he became a trustee holding leases in his name for the benefit of the corporation (¶ 21) is a mere conclusion of law. The allegation that he told Hifler that he was to have a one-fourth interest in the corporation (¶ 16) does not include any averment that he ever acquired such an interest, and the contrary is indicated by the allegation that plaintiffs know of no stock that was ever issued to any persons except themselves (¶ 9).

Do the facts that he owned the leases, that the corporation was organized at his instance and request, that (inferentially) he controlled the board of directors, and that he acted for the corporation in selling stock to the plaintiffs, make him a promoter and place him in a confidential relation to the plaintiffs? Promoter is not a term of law but of business, and is ordinarily applied to one who brings together the persons who become interested in an enterprise, who aids in procuring subscriptions, and sets in motion the machinery which leads to the formation of the corporation itself. (*Armstrong* v. *Sun Printing & Pub. Assn.*, 137 App. Div. 828, 830, 831.) The most frequently quoted definition is contained in *Old Dominion Copper, etc., Co.* v. *Bigelow* (203 Mass. 159, 177; 89 N. E. 193): " In a comprehensive sense ' promoter ' includes those who undertake to form a corporation and to procure for it the rights, instrumentalities and capital by which it is to carry out the purposes set forth in its charter, and to establish it as fully able to do its business. Their work may begin long before the organization of the corporation, in seeking the opening for a venture and projecting a plan for its development, and may continue after the incorporation by attracting the investment of capital in its securities and providing it with the commercial breath of life." The complaint might have expressed more clearly what the pleader had in mind. Nevertheless, it must be held to state all facts to be implied from the allegations by reasonable and fair intendment. It is inferred from the extent to which it is alleged that Calkins participated in establishing this venture that he had some interest in doing so, although what it was does not exactly appear. A complaint will be upheld against fiduciaries upon " charges, though quite indefinite and uncertain, that they have made profit for themselves." (*Sage* v. *Culver*, 147 N. Y. 241, 247.) The conclusion is drawn that there was a confidential relationship between Calkins and those investors, the abuse of which gave rise to a constructive trust attaching to the property in the hands of Calkins and of assignees who acquired title with notice thereof. *Dyckman* v. *Valiente* (42 N. Y. 549), *King* v. *Barnes* (109 id. 267) and *Mattikow* v. *Sudarsky* (248 id. 404) involve similar factors. The law that

assignees with notice are bound is supported by *Murphy* v. *Whitney* (140 N. Y. 541); *A. S. R. Co.* v. *Fancher* (145 id. 552); Bogert on Trusts and Trustees (Vol. 1, p. 52; vol. 3, ch. 24 on Constructive Trusts, pp. 1539, 1540).

The statement that an assignment of these leases was executed or attempted to be executed by Calkins and delivered or attempted to be delivered to Calmac Oil and Gas Corporation has been disregarded. (*Clark* v. *Dillon*, 97 N. Y. 370.)

The next question is whether plaintiffs have excused making a demand upon the board of directors of Calmac Oil and Gas Corporation to bring this suit. The complaint is drawn upon the theory that the cause of action does not belong to the plaintiffs but to the corporation. A demand is sought to be excused by the allegations that the directors are dummies, under the domination of Calkins' attorney, and have held ever since incorporation, that they have performed no official acts and would be incompetent to prosecute this action. No decisions have been found holding that the existence of dummy directors is enough in itself. In this instance it is thought that the fact that these directors, having no financial interest and under the control of Calkins' attorney, stood idly by while Calkins wronged the corporation by neglecting to provide it with legal title to the leases on the strength of which he had obtained the money that was invested by the plaintiffs, is sufficient to establish that a demand upon them would have been futile. It is true that they are not charged with perpetrating the primary wrong, but on the basis of the complaint they permitted a wrong to be accomplished either knowingly or as a result of negligence. Under these circumstances it can hardly be expected that they would aim to succeed in prosecuting an action to redress a wrong which they may be held liable for having allowed. (*Brinckerhoff* v. *Bostwick*, 88 N. Y. 52.) The powers of a court of equity to provide an appropriate remedy for failure of those in control of a corporation to take appropriate action for the protection of the corporation are not limited to rigid categories. (*Koral* v. *Savory, Inc.*, 276 N. Y. 215, 219.)

Was it a condition precedent to the commencement of this action for the plaintiffs to have demanded a special meeting of the stockholders for the purpose of electing new directors? They allege that they know of no stockholders other than themselves. The directors have held over, and it is urged that plaintiffs could have turned them out and elected others who would have performed their duties more to their liking. There is much force in that contention. (*Hawes* v. *Oakland*, 104 U. S. 450.) But the *Hawes* case has been construed and limited, and the difficulties and uncer-

tainties attending a stockholders' meeting have caused our courts to proceed cautiously. (*Continental Securities Co.* v. *Belmont,* 206 N. Y. 7, 19; *Koral* v. *Savory, Inc.,* 276 id. 215, 219.) In the instant case the complaint alleges that all of the books of Calmac Oil and Gas Corporation have been lost or destroyed, from which it follows that a stockholders' meeting can be held with difficulty inasmuch as no one can know with certainty who the stockholders are, where they reside, or what notice is required by the by-laws.

The argument that Calmac Oil and Gas Corporation is a necessary party and has not been and cannot be served with the summons and complaint assumes facts which are not before the court upon this motion and cannot be disposed of at this time. Neither is it one of the grounds stated in the notice of motion.

It has been earnestly and ably contended that the complaint should be dismissed upon the ground of laches. That is an affirmative defense ordinarily incapable of being raised upon a motion addressed to the sufficiency of the complaint. (*Sage* v. *Culver,* 147 N. Y. 241.) A cause of action is not stated, however, where laches appears upon the face of the complaint. (*Mott* v. *New York Security & Trust Co.,* 29 Misc. 39; affd., 52 App. Div. 623.) As the present cause of action has been construed, it was the duty of Calkins to have transferred his oil and gas leases to Calmac Oil and Gas Corporation when or before plaintiffs' money became invested. A cause of action then accrued to impress a trust in favor of the corporation. (*Lammer* v. *Stoddard,* 103 N. Y. 672.) That remained the only remedy available until Calkins' administrators sold the leases to Becker. Thereupon an alternative remedy came into existence to sue Calkins' administrators for the purchase price which they had obtained from Becker in an action for money had and received. (*Brown* v. *Post,* 1 Hun, 303; affd. on opinion at General Term, 62 N. Y. 651; *Hammond* v. *Pennock,* 61 id. 145.) Thereafter, and after discovering that Calkins had not transferred these leases to Calmac Oil and Gas Corporation, plaintiffs became obliged to elect which remedy to pursue. At least they could not acquiesce in defendants' expenditures for development and then get the benefit by recapturing the property. The complaint alleges that subsequent to the assignment of the leases to Becker several gas wells were drilled into the Oriskany sand, and that defendants Godfrey L. Cabot, Inc., and New Penn Development Corporation are operating said properties and drilling additional wells. Those facts were known to the plaintiffs before commencing their action, but the complaint does not state when they discovered them. No doubt they had to act at once upon learning that these things were going on, and careful investors might have found out long before by consulting the

records in the Steuben county clerk's office that the leases had not been assigned to the corporation. But the recording acts do not charge plaintiffs with constructive notice for that purpose, and it is well established that mere lack of diligence without knowledge of the fraud is insufficient to deprive a party of his legal right to rescind a fraudulent contract. (*Baker* v. *Lever*, 67 N. Y. 304; *Barnard* v. *Campbell*, 58 id. 73; *Brown* v. *Post, supra.*) " It is no excuse for a culpable misrepresentation that means of probing it were at hand." (*Albert* v. *Title Guarantee & Trust Co.*, 277 N. Y. 421, 423.) " It might well be that opportunities to ascertain the fraud would be of no avail to a person unfamiliar with the business transactions of corporations." (*Baker* v. *Lever, supra,* p. 309.) The elapsed time prior to the transfer by Calkins' administrators to Becker in December, 1935, would not count, even if plaintiffs had known the facts, inasmuch as " the question of how much time a party to a contract has permitted to elapse is not necessarily determinative of the right to rescind; the immediate consideration being whether the period has been long enough to result in prejudice to the other party." (3 Williston on Contracts, § 1526.) The commencement of the action was sufficient notice of election of remedies.

The further argument has been made, although laches is ordinarily an affirmative defense, that the burden rests upon the plaintiff of excusing laches in an equitable action where it appears upon the face of the complaint that the Statute of Limitations has run which would be applicable to an analogous action at law. ( *Kelley* v. *Boettcher*, 85 Fed. 55.) Upon this basis it is contended that plaintiffs herein were obliged to plead that they were without knowledge that defendants were operating the leased properties until a short time prior to the commencement of the action, instead of that duty resting, as usual, upon the defendants. In none of the notices of motion is the ground stated that the complaint should be dismissed for the reason that the cause of action did not accrue within the time limited by law as required by rule 107 of the Rules of Civil Practice, and no discussion of the Statute of Limitations is pertinent except in so far as it may be related to laches. The so-called analogous limitation at law has been referred to as though it were the Pennsylvania statute limiting actions upon contract. No Pennsylvania statute can be invoked upon this motion inasmuch as none has been pleaded. Unless the New York Statute of Limitations applies, no Statute of Limitations can be considered here for any purpose. Whether the New York statute governs depends upon whether the *lex fori* controls the limitation of actions. (*Miller* v. *Brenham*, 68 N. Y. 83.) Where the parties to an action are non-residents of New York that is not the rule (*Meyers* v.

*Credit Lyonnais*, 259 N. Y. 399), unless either is authorized to transact business in New York. (*McConnell* v. *Caribbean Petroleum Co.*, 278 N. Y. 189.) Although one plaintiff resides in New York, the present action is a derivative one brought in the interest of a Pennsylvania corporation. The effect is that the action is entirely between non-residents except for the State Tax Commission. But some of the defendants are alleged to be engaged in business in New York State, and the leases, although personal property (*Wagner* v. *Mallory*, 169 N. Y. 501), have their situs in New York. (*Hutchison* v. *Ross*, 262 N. Y. 381, 388–392.) It is assumed that the New York limitations control if they apply. The limitation operative upon equitable actions to impress constructive trusts is ten years (*Cahill* v. *Seitz*, 93 App. Div. 105; *Pitcher* v. *Sutton*, 238 id. 291; affd., 264 N. Y. 638; *Smith* v. *Hamilton*, 43 App. Div. 17; Civ. Prac. Act, § 53), and begins to run from the time when the wrong was committed by which the party became chargeable as trustee by implication. (*Lammer* v. *Stoddard, supra; Pitcher* v. *Sutton, supra*.) Confusion has arisen in the decisions over the use of the phrase analogous limitation at law in connection with actions to enforce constructive trusts. Such actions often bear an analogy to actions at law for money had and received (*Miller* v. *Schloss*, 218 N. Y. 400, 407, citing *People ex rel. Dusenbury* v. *Speir*, 77 id. 144, 150), and where the action is to recover money which has been misappropriated courts have spoken indifferently of the action as for money had and received or to hold the defendant as a trustee *ex maleficio*. Often such actions are brought in equity to compel a defendant to account for defalcations, which is where the question usually arises whether the ten-year or six-year Statute of Limitations applies. It was provided by the Revised Statutes of 1829 that " whenever there is a concurrent jurisdiction in the courts of common law, and in courts of equity, of any cause of action, the provisions of this title limiting a time for the commencement of a suit for such cause of action, in a court of common law, shall apply to all suits hereafter to be brought for the same cause, in the Court of Chancery." (Pt. III, chap. IV, tit. II, § 49.) " But the last section shall not extend to suits over the subject matter of which a court of equity has peculiar and exclusive jurisdiction, and which subject matter is not cognizable in the courts of common law." (§ 50.) These provisions were repealed by the Code of Procedure adopted in 1851, but the substance of them has been retained by the courts which still hold that when a legal and equitable remedy exists as to the same subject-matter, the latter is under the control of the same statutory bar as the former. (*Keys* v. *Leopold*, 241 N. Y. 189, 193.) This rule has been applied to an action for an accounting against trustees *ex maleficio*.

The court held that there was a concurrent remedy at law entailing the six-year statute by action for money had and received. (*Hart v. Goadby*, 72 Misc. 232, LEHMAN, J.) A similar statement was made by Chancellor WALWORTH in *Hawley v. Cramer* (4 Cow. 717, 742). The term analogous limitation at law refers to the limitation applicable where there is a concurrent remedy at law and has no application to an action of exclusively equitable cognizance. Here it is not sought to compel Calkins' administrators to account for what they obtained upon the sale of the oil and gas leases which would bear an analogy to money had and received, but to impress a trust upon the leases themselves as the result of a constructive fraud. There is no concurrent remedy at law, (*McKenzie v. Wappler Electric Co., Inc.*, 215 App. Div. 336, 341, distinguishing *Hart v. Goadby, supra.*) Under such circumstances the ten-year statute alone applies. (*Pitcher v. Sutton*, 238 App. Div. 291; affd., 264 N. Y. 638; *McKenzie v. Wappler Electric Co., Inc., supra.*) If there could be any analogous limitation at law, it would not be the statute applicable to actions for money had and received, but to actions for fraud where the cause of action does not accrue until it is discovered. (*Pitcher v. Sutton, supra.*) The upshot is that the complaint does not need to state that plaintiffs were unaware of what was going on, and that the burden is on defendants to plead and prove affirmatively that the courts should not assist plaintiffs to recapture the property for the reason that they have knowingly permitted defendants to develop it for their advantage. We are confined at present to the complaint alone, from which it does not appear when plaintiffs discovered the wrong, or that they delayed unreasonably afterwards in commencing the action.

Nothing is alleged indicating that Calmac Oil and Gas Corporation had knowledge prior to the commencement of the action of the facts constituting the constructive trust. It is not chargeable with the knowledge possessed by Calkins inasmuch as he acted in hostility to its interests in failing to transfer the leases at or before the times when he is supposed to have acted for it in selling stock to the plaintiffs. (*Henry v. Allen*, 151 N. Y. 1; *Hurley v. John Hancock Mut. Life Ins. Co.*, 247 App. Div. 547.) Neither does it militate against plaintiffs that Calkins, his representatives or assigns, were not sued at the instance of a board of directors who were under his domination.

The motion by defendant Becker is denied.

(Portion of opinion relating to motions to dismiss complaint by defendants other than Becker, omitted.)